No. 48,516

STATE OF KANSAS, *Appellee,* v. BOBBY D. COE, JR., *Appellant.*

(574 P.2d 929)

154

Opinion filed November 22, 1977.

*S. Richard Mellinger,* of Roach & Mellinger, of Emporia, argued the cause and was on the brief for the appellant.

*Philip E. Winter,* assistant county attorney, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal from a conviction and sentence of the trial court in Lyon County. The jury found Bobby D. Coe, Jr., (defendant-appellant) guilty of two counts of aggravated robbery (K.S.A. 21-3427). The trial court sentenced Coe to imprisonment for 45 years to life on each count and decreed the sentences to run consecutively.

The appellant asserts numerous trial errors on appeal.

Kathy Gibson and her husband own the Maverick Club, a private Class B club, located just outside the city limits of Emporia. At approximately 3:00 a.m. on September 17, 1975, shortly after closing hours, two men entered an open front door of the club and took a cash box containing $250, and $29 in cash, a draft card and various identification cards from Charles Stroud, a club musician.

The robbers were described as a black man and a white man or a "salt and pepper" team. They were wearing dark stocking caps and women's hosiery over their heads. The white man carried a sawed-off shotgun. After the robbery, they left in a small, 4-cylinder car.

On September 19, 1975, J. Vernon Humphrey, a KBI agent investigating the robbery, and a local police officer stopped the

appellant for speeding in downtown Emporia. Believing the appellant and his passenger, Carl Buckner, to be possible suspects in the Maverick robbery, Agent Humphrey asked them to accompany him to the Emporia Police Station for questioning. After being advised of his *Miranda* rights, the appellant was questioned and released. During the course of this conversation, he *voluntarily* allowed the officers to obtain a hair sample.

Early in the morning of September 21, 1975, the appellant, accompanied by Buckner and two women, drove to Utica, Kansas, to the home of a friend, Steven Dimitt. Dimitt testified the appellant feared they were "hot" and asked to stay with Dimitt and his wife for several weeks. While the two were reminiscing about old times, *the appellant told Dimitt he had "pulled the Maverick Club robbery."* Dimitt, who was on parole at the time, promptly notified local Ness County authorities, who contacted Agent Humphrey. After talking with Dimitt and his wife, Agent Humphrey and Lyon County Sheriff Daniel Andrews arrested the appellant and Carl Buckner at the Dimitts' home on September 22, 1975.

A more detailed statement of the facts may be found in the companion case of *State v. Buckner*, 223 Kan. 138, 574 P.2d 918.

The appellant and Buckner were separately charged with the same counts of aggravated robbery. At the appellant's preliminary hearing, Agent Humphrey testified the appellant, a white man, and Buckner, a black man, developed as possible suspects because a field investigation report from the Emporia Police Department stated these two individuals lived together, associated together, had access to a car similar in description to the one used in the robbery, and a cap had been found with the initials "BDC" on it along with other items known to have been taken in the robbery. Agent Humphrey had obtained a verbal report from the KBI laboratory that they had a possible match-up on hair samples taken from the cap and the appellant on September 19. Further, Humphrey testified following the arrest, he asked the appellant what he had done with the shotgun used in the robbery and the appellant replied he "threw it away."

Subsequently, the appellant and Buckner were bound over for trial. Both men unsuccessfully moved the trial court to consolidate the two cases for trial. The appellant also moved, without

success, to suppress as evidence the hair samples and his oral statements made to Agent Humphrey following the arrest, and to obtain a transcript of the suppression hearing.

Carl Buckner was tried prior to the appellant. Prior to Buckner's trial, the appellant moved to obtain a transcript of the upcoming proceedings. This motion was denied as premature. At both Buckner's preliminary hearing and trial Steven Dimitt invoked his Fifth Amendment privilege against self-incrimination, when asked if he was using marijuana at the time the appellant allegedly made incriminating statements to him.

At the appellant's trial none of the witnesses to the Maverick robbery were able to positively identify the appellant, a man 6 feet 3 inches weighing 155 pounds, as the white robber.

Kathy Gibson, who was within fifteen to twenty feet of the men during the robbery, described the white robber as a blond man of fairly small build and average height of 5 feet 8 inches to 5 feet 9 inches, carrying a sawed-off shotgun.

Sheryl York, assistant manager of the Maverick Club, was cleaning tables when the robbery occurred. She testified the black man was "extremely taller than the white man." She too described the white robber as 5 feet 8 inches to 5 feet 9 inches and was unable to identify the appellant as the man in the club. Similar testimony was given by Charles Stroud.

Thus, Steven Dimitt's testimony became especially crucial to the appellant. By oral motion, he unsuccessfully moved to have Dimitt's testimony limited to exclude the remarks relating to the confession of the robbery. The trial court also sustained an objection to the appellant's question to Mr. Dimitt as to whether Mr. Dimitt was smoking marijuana at the time of the conversation. On January 8, 1976, the jury found the appellant guilty of both counts. His motion for a new trial was overruled.

After the appellant had been sentenced and while his case was pending on appeal to this court, his counsel learned of newly discovered evidence and a second motion for a new trial was made. Accordingly, the appeal was stayed and the case remanded to the district court of Lyon County for a hearing on this motion. The evidence consisted of a robbery by a similar "salt and pepper" team which took place in the Emporia area five months prior to the Maverick robbery. The appellant, who was incarcerated at the Kansas State Industrial Reformatory at the time of

the earlier robbery, had an iron-clad alibi. The appellant suggested the same "salt and pepper" team committed both robberies. Thereafter, the motion was overruled and the appellant's appeal reinstated.

## I. Consolidation of Trials

The appellant first contends the trial court erred in ruling it was without authority to order a joint trial of the appellant and Carl Buckner.

After the appellant and Buckner were separately indicted on charges of aggravated robbery, the two men moved the court to grant them a joint trial. The trial court denied the motion ruling it was without authority to order a consolidated trial.

K.S.A. 22-3204 specifically grants power to sever; however, the statute is silent concerning the power of the trial court to grant or to deny a motion to consolidate. It provides:

"When two or more defendants are jointly charged with any crime, the court may order a separate trial for any one defendant when requested by such defendant or by the prosecuting attorney."

While the question has never been specifically presented to this court, authority exists in other jurisdictions that defendants *jointly* charged do not have the right to insist upon joint trials. In *Wilkins v. The State*, 112 Ala. 55, 21 So. 56, 70 A.L.R. 1177 (1895), the court first recognized what has become the general rule and said:

". . . The statute, (Cr. Code of 1886, § 4451), confers on such defendants, the unqualified right to elect and demand separate trials; but it is incapable of any just construction, conferring the right to demand that the trial be joint. If a separate trial is not demanded, it rests, as at common law, in the sound discretion of the court, whether the trial be joint or several. . . ." (pp. 56-57.)

(See also 75 Am. Jur. 2d, Trials, § 17, p. 133, and 23 C.J.S., Criminal Law, § 934, p. 709.)

This court discussed the problem in *State v. Rueckert*, 221 Kan. 727, 561 P.2d 850, where it was said:

". . . The granting of separate trials is a discretionary power which rests in the hands of the trial court. (K.S.A. 22-3204.) A defendant does not have the right to be tried with or separate from a codefendant if no prejudice to his rights can be shown. . . ." (pp. 730-731.)

Although 22-3204, *supra,* is silent concerning the power of the trial court to consolidate trials on the motion of one or more of the

defendants, the trial court has such inherent authority. The underlying purpose of the statute is to provide the defendant a fair trial without undue delay. The trial court is vested with broad discretion to achieve this goal. On the record presented before us, we cannot say the appellant was prejudiced by failure to consolidate the trials.

## II. Right to Free Transcript

The appellant argues the trial court erred in denying him a copy of the transcript of Carl Buckner's trial and in overruling his motion for a copy of his own preliminary proceedings. These points will be discussed together because they raise the same basic legal issue.

The appellant and Carl Buckner were each charged separately with the offenses committed at the Maverick Club. The initial proceedings of first appearance, preliminary examination and arraignment were held the same day, and the prosecution subpoenaed the same witnesses for each preliminary examination. Thereafter, the joint proceedings terminated and each party's suppression and other preliminary motions were conducted separately.

The appellant's trial was held on January 7 and 8, 1976, while Carl Buckner was first tried on December 22, 1975. The appellant first sought a transcript of Buckner's trial on December 5, 1975. This request was denied as premature. After Buckner's first trial and before his own trial, the appellant again sought a copy of the transcript. The trial court denied the motion even though the appellant offered to waive his "speedy trial" rights to allow sufficient time to prepare the transcript.

The right to the transcript of a codefendant's separate trial raises a question of first impression in Kansas. The appellant cites the Nevada case of *Beasley v. State,* 81 Nev. 431, 404 P.2d 911 (1965) as precedent. In *Beasley,* the trial court held it was prejudicial error to deny defendant's request to be supplied a transcript of the separate trial of his codefendant.

We find the reasoning in *State of New Jersey v. Cox,* 101 N. J. Super. 470, 244 A.2d 693 (1968) more persuasive. There, the court distinguished the *Beasley* opinion and held the defendant had no constitutional right to a transcript, stating:

"Our attention has not been called to any case in which the doctrine of *Griffin*

has been extended, without a showing of need, to a transcript of the separate trial of an indigent defendant's codefendant. While such appears to have been the ruling in *Beasley v. State*, . . . a reading of the opinion would seem to indicate that the real issue there was whether it was error to compel defendant to go to trial in advance of receipt of a free transcript of the separate trial of his codefendants which another judge had ordered to be furnished to him." (p. 479.)

Similarly, in *State v. Peterson*, 46 Ohio St. 2d 425, 349 N.E.2d 308 (1976), the court denied a pretrial motion for a free transcript of his codefendant's prior trial when the defendant made no showing the transcript was necessary for an adequate defense and alternative devices were available. (See also *People v. Hudson*, 7 Ill. App. 3d 333, 287 N.E.2d 297 [1972] where defendant's motion for his codefendant's prior trial transcript on the eve of trial was held untimely.)

We hold on the facts in this case the appellant had no right to a free transcript of his codefendant's prior trial.

The appellant also asserts error in the trial court's denial of his motion on December 15, 1975, for a copy of his own suppression hearing and other pretrial proceedings held on December 5 and 9, 1975.

Our court has discussed the indigent defendant's right to a free copy of the transcript of his prior criminal proceedings on numerous occasions. (See *State v. Jones*, 222 Kan. 56, 563 P.2d 1021 and cases cited therein.) The cases generally allow a defendant access to a copy of his transcript in order to prepare an adequate defense; however, the state need not prepare a copy if available alternatives exist.

Here, the factual situation is analogous to the narrow circumstances presented in *Britt v. North Carolina*, 404 U.S. 226, 30 L.Ed.2d 400, 92 S.Ct. 431 (1971) and our own decision of *State v. Kelley*, 209 Kan. 699, 498 P.2d 87. The appellant's proceedings were before the same judge, where the appellant was represented by the same counsel in the prior proceedings and the same court reporter recorded the proceedings well within the span of one month. It appears the court reporter was available as a witness. Further, the appellant shows no prejudice for failure to get a copy of his own preliminary proceedings. In fact, the record indicates the appellant had access to the Buckner transcripts as well as his own and introduced them at trial. Therefore, no error is shown.

### III. Suppression of Statements

The appellant complains the trial court erred in overruling his motion, pursuant to K.S.A. 22-3215, to suppress as evidence any and all statements given by him and obtained as an incident to his arrest.

He contends his arrest in Ness County was not supported by probable cause; thus, statements made pursuant to the arrest should have been suppressed by the trial court.

Probable cause for an arrest without a warrant depends upon the facts of each case which would lead a reasonable and prudent officer to believe a felony has been or is being committed. (*State v. Holthaus*, 222 Kan. 361, 564 P.2d 542; *State v. Brocato*, 222 Kan. 201, 563 P.2d 470; *State v. Brown*, 220 Kan. 684, 556 P.2d 443; and *State v. Barnes*, 220 Kan. 25, 551 P.2d 815.)

The record reflects an abundance of evidence to establish probable cause. The robbery was committed by a "salt and pepper" team and the appellant is a white man who lived with a black man. The car used as the "get-away" car was described as a 4-cylinder model and the appellant often used a 4-cylinder car owned by a girl friend. Furthermore, a navy utility cap with the initials "BDC" had been found in a field south of Emporia with items identified as having been taken from the robbery scene. After interviewing the Dimitts concerning the alleged confession, Agent Humphrey testified he contacted the KBI laboratory where its agents reported a possible match-up of hair taken from the navy cap with appellant's hair samples. Armed with this information, Agent Humphrey proceeded to the Dimitt residence in Utica, Kansas, where he arrested the appellant and Buckner. Time was of the essence. The appellant had already fled from Emporia and Agent Humphrey had more than enough evidence to establish probable cause for the arrest.

The appellant suggests each element should be examined individually for probative value and utility in establishing the necessary probable cause. We disagree.

In *State v. Curtis*, 217 Kan. 717, 538 P.2d 1383, our court recognized that the elements of information necessary to establish probable cause must be considered together. We cited with approval *Adams v. Williams*, 407 U.S. 143, 32 L.Ed.2d 612, 92 S.Ct. 1921, where the court stated probable cause does not require the same type of specific evidence for each element of the offense as would be needed to support a conviction.

Agent Humphrey testified that following the arrest and *Miranda* warnings, but before placing the appellant in the car for transport, he asked what was done with the shotgun used in the robbery. The appellant replied that he· "threw it away." In response to questioning he also stated he didn't know where he had thrown it, where he got it or who sawed it off.

Now the appellant complains the trial court improperly admitted the statements made to Agent Humphrey into evidence. On many occasions this court has stated uncoerced statements made to police officers by a defendant who has been given warnings as to his constitutional rights are admissible as evidence at his trial. (*State v. Jones*, supra; *State v. Barnes*, supra; *State v. Melton*, 207 Kan. 700, 486 P.2d 1361; and *State v. Foster*, 202 Kan. 259, 447 P.2d 405.)

## IV. Hair Samples

The appellant asserts the trial court erred in overruling his motion pursuant to K.S.A. 22-3216 to suppress as evidence hair samples taken from him at the Emporia Police Department.

The record indicates during the time the appellant was under surveillance by the KBI as a possible suspect in the Maverick robbery, he was stopped for speeding in downtown Emporia. The appellant voluntarily accompanied Agent Humphrey to the Emporia Police Department. After *Miranda* warnings, Agent Humphrey questioned the appellant and asked for a hair sample. The appellant voluntarily removed his hat and Agent Humphrey proceeded to take a hair sample.

Appellant's argument is threefold: first, he asserts an arrest was made; second, if the arrest was made for the armed robbery there was no probable cause; and third, if the arrest was made for the traffic offense, it was a sham.

He relies on cases from other jurisdictions which hold an arrest is invalid when it is merely used as a ploy to afford agents or police an opportunity to investigate and amass information for a second offense. (*United States v. Martinez*, 465 F.2d 79 [2d Cir. 1972]; *Mills v. Wainwright*, 415 F.2d 787 [5th Cir. 1969]; *Amador-Gonzalez v. United States*, 391 F.2d 308 [5th Cir. 1968]; *United States v. Harris*, 321 F.2d 739 [6th Cir. 1963]; and *State v. Barwick*, 94 Idaho 139, 483 P.2d 670 [1971].)

This argument lacks merit. A careful review of the record indicates no arrest was made. Furthermore, the appellant volun-

tarily went to the police station, and he makes no claim his consent to the taking of hair samples was not knowingly or understandingly given. (See *Oregon v. Mathiason,* 429 U.S. 492, 50 L.Ed.2d 714, 97 S.Ct. 711.)

### V. Drug Usage

Appellant next asserts error in relation to the testimony of Steven Dimitt. He contends:

"The Court erred in overruling Defendant's motion to limit the scope of the testimony of Steve Dimitt; in sustaining Plaintiff's objection to Defendant's question of Steve Dimitt concerning his use of marijuana; or in not striking certain direct testimony of Steve Dimitt upon his repeated invocation of his right to not be a witness against himself; or in overruling Defendant's motion for a new trial."

The crux of the appellant's argument is that it was error for the trial court to limit his cross-examination of Steven Dimitt as to his use of marijuana when the alleged confession took place. At this point it was the credibility of Dimitt's testimony that was material.

Mr. Dimitt testified on direct examination about a conversation in the Dimitt home when the appellant allegedly stated he was "hot." On cross-examination, the following exchange took place:

"Q. Mr. Dimitt, at the time of these conversations, which you testified, were you smoking marijuana at the time?

"MR. PATTON: Objection, Your Honor, that's collateral to this case; whether or not he was or he wasn't is irrelevant in this case.

"THE COURT: Sustained."

Appellant maintains the evidence sought by the question was admissible as to Steven Dimitt's credibility and ability to perceive. He asserts to exclude such evidence, without also striking Mr. Dimitt's direct testimony as to the conversation, violated his Sixth Amendment right to effective cross-examination and confrontation of the witness.

Our court had occasion to discuss this problem in *State v. Belote,* 213 Kan. 291, 516 P.2d 159. In *Belote,* we recognized the general rule relating to the admissibility of drug use for impeachment purposes in order to show the witness was under the influence at the time of the events to which he testifies. We said:

" '. . . [F]or the purpose of discrediting a witness, evidence is not admissible to show that he is a user of [drugs], or to show the effect of the use of such drugs, unless it is proven that the witness was under their influence at the time of the occurrences as to which he testifies, or at the time of the trial, or that his mind

or memory or powers of observation were affected by the habit.' " (pp. 295-296.)

This court followed the *Belote* exception relating to drug influence at the time he testified in *State v. Nix,* 215 Kan. 880, 529 P.2d 147.

Numerous cases from other jurisdictions have dealt with this issue. We note in particular *Isonhood v. State,* 274 So.2d 685 (Miss. 1973), where the court held it was reversible error to limit the cross-examination of the state's key witness relating to his use of drugs or alcohol on the day the robbery was planned. The witness's testimony directly supported the defendant's conviction.

In *State v. Casey,* 4 Ore. App. 243, 478 P.2d 414 (1970) the court overruled objections to questions asked of a witness found in a hotel with the defendant the night of arrest concerning her use of pills the day of the events in question. Finally, in *State v. Ballesteros,* 100 Ariz. 262, 413 P.2d 739 (1966), the defendant was asked:

" 'Q.  Were you on or about the 18th or the 30th of October, Mr. Ballesteros, were you using narcotics then?' " (p. 266.)

The court found the defendant, like any witness, could be impeached by showing the use of drugs at the time of the purported offense because such testimony was unreliable and the jury should consider this in arriving at its verdict. (See also Anno., Use of Drugs As Affecting Competency or Credibility of Witness, 65 A.L.R. 3d 722, § 5[b]; 2 Wharton's Criminal Evidence, § 434 [13th Ed. 1972]; McCormick on Evidence, § 45 [2d Ed. 1972]; and 3a Wigmore on Evidence, §§ 931-934 [Chadbourn Rev. 1970].)

In view of these cases we hold it was error for the trial court to deny the appellant the right to cross-examine Steven Dimitt concerning his use of marijuana at the time of the alleged confession. The record discloses that subsequent to the court's ruling Dimitt was extensively cross-examined to test the witness's recollection of events and statements on the occasion in question.

Our attention is drawn to *West v. State,* 74 Wis. 2d 390, 246 N.W.2d 675 (1976). The witness in that case refused to answer questions concerning his drug use on the night of the robbery by asserting his Fifth Amendment privilege. There it was held the exclusion of his testimony as to drug use did not deny the defendant charged with armed robbery the right to adequately

confront his accuser, in light of the fact the witness's recollection of events of the robbery was tested by detailed cross-examination.

Moreover, the Colorado Supreme Court in *People v. Steele,* 563 P.2d 6 (Colo. 1977), held in the absence of proper foundation showing how the general use of marijuana affects the capacity of a witness to observe and remember events, the trial court did not err in prohibiting defendant from impeaching three prosecution witnesses by showing the extent to which they used marijuana.

We have concluded it was improper for the trial court to limit the cross-examination of Steven Dimitt. As we have previously indicated, the circumstantial evidence in this case was abundant. The navy cap with the "BDC" initials, the matching hair samples and the admissions together with the general description of the robbers all implicated the appellant. In our judgment, in view of the overwhelming circumstantial evidence disclosed in the record, the limitation placed on Steven Dimitt's testimony concerning his use of marijuana the night of the alleged confession was harmless error. Therefore, we decline to reverse the case and to grant a new trial on this point.

Finally, that part of appellant's argument regarding the invocation of the Fifth Amendment privilege by Dimitt does not pertain here, because it was not invoked at the appellant's trial but, rather, at Carl Buckner's trial.

## VI.   Witness's Testimony

The appellant contends the trial court erred in sustaining an objection to his question of Steven Dimitt whether his recollection of a conversation with appellant was different from his wife's recollection.

The record reflects this line of questioning was confusing to all the parties. The appellant's attorney read from various transcripts and notes from the Buckner trial and preliminary proceedings as well as from the appellant's own preliminary proceedings. The questions asked by appellant's attorney did not relate to Mr. Dimitt's testimony. Instead, the appellant's attorney asked if the conversation as reflected in Mrs. Dimitt's testimony at the preliminary hearing was, in fact, the same conversation that Mr. Dimitt remembered. While it would have been proper for the appellant's attorney to have asked Mr. Dimitt if he had discussed the conversation with his wife and remembered such conversation as she remembered it, the question which was asked of Mr.

Dimitt was improper and was not shown to be within Mr. Dimitt's knowledge. Accordingly, the point has no merit.

### VII. Introduction of Transcripts

The appellant states the trial court erred in sustaining the state's objection to the introduction of two transcripts of the prior testimony of Steven Dimitt. The issue raised here deals with the same circumstances surrounding the introduction of Mrs. Dimitt's testimony. The appellant attempted to have the transcripts from Carl Buckner's preliminary hearing and trial together with his own preliminary proceedings admitted into evidence. In his brief, the appellant abandons his claim of error as to Buckner's trial transcript, but he claims error as to the trial court's failure to admit the transcript of the Buckner preliminary hearing into evidence.

Without laying a proper foundation, the appellant's attorney questioned the witness by skipping from the various transcripts, and at the same time, he interposed questions of his own. He failed to properly identify the transcripts and his attempted introduction of the transcripts into evidence was not timely made. The trial court properly sustained the objections to the introduction of the transcript.

### VIII. Sentencing

The next two points on appeal challenge the appellant's sentence. First, the appellant contends the trial court erred in entering judgment of sentence in that it failed to comply with K.S.A. 22-3426 or K.S.A. 21-4603(3) (now K.S.A. 1976 Supp. 21-4603[3]). He also asserts the trial court abused its discretion in imposing sentence and in overruling his motion for modification of sentence.

K.S.A. 22-3426 provides in pertinent part:

"If the sentence is increased because defendant previously has been convicted of one or more felonies the record shall contain a statement of each of such previous convictions, showing the date, in what court, of what crime and a brief statement of the evidence relied upon by the court in finding such previous convictions. Defendant shall not be required to furnish such evidence."

The statute makes two basic requirements when the habitual criminal act is involved. First, it calls for the record to include a statement of each previous conviction with the date, court, crime and a brief statement of the evidence relied upon by the court in

finding such previous conviction. We have examined the entire transcript of the sentencing proceedings and find it meets this requirement.

The second requirement is that the defendant shall not be required to furnish such evidence under the statute. Here, the evidence relied upon by the trial court in finding the second prior conviction for a felony was the testimony of Ed Fisher, a parole officer. Mr. Fisher prepared a presentence report for the appellant. The appellant requested the presentence report because he had suffered three concussions within a five year period, and Mr. Fisher had previous experience with a similar case which had required special testing and diagnosis. There, the concussions had physically impaired the individual's impulse control portions of the brain, and the solution was simple medicine.

On cross-examination, Mr. Fisher also testified while preparing the report, the appellant advised him of his record of criminal activities, including two prior felony convictions. The records and journal entry were then introduced by the state as evidence of previous convictions in order to invoke the habitual criminal act.

Upon careful examination, the statute provides the defendant shall not be *required* to furnish evidence against himself. Thus, the question becomes: When a defendant puts the probation officer on the stand and during the course of his testimony the state elicits evidence which it uses to increase the sentence, has the defendant been *required* to furnish such evidence? We think not.

The appellant chose to put Mr. Fisher on the stand in order to present evidence in support of his request for special tests. The state's cross-examination was proper. We hold under the facts presented, the appellant was not *required* to furnish evidence against himself.

Additionally, K.S.A. 21-4603(3) (now K.S.A. 1976 Supp. 21-4603[3]) states:

"At the time of committing an offender to the custody of the secretary of corrections the court shall submit to said officer recommendations on a program of rehabilitation for said offender, based on presentence reports, medical and psychiatric evaluations and any other information available. Such recommendations shall include desirable treatment for correction of physical deformities or disfigurement that may, if possible, be corrected by medical or surgical procedures or by prosthesis. The court may recommend further evaluation at the reception and diagnostic center, even though defendant was committed for presentence evaluation."

The record indicates the court, as part of its presentence report, ordered a neurological examination be made of the appellant. This examination was not made before the appellant's hearing on sentence modification. The appellant contends the trial court disregarded his potential for rehabilitation and the evidence of his possible physical injury as well as its own prior order. The result, the appellant complains, was a total abuse of discretion.

Our court has commented upon the general rules relating to sentencing numerous times. Provided it is within statutory limits, a sentence fixed by the trial court will not be set aside on appeal unless it is so arbitrary and unreasonable it constitutes an abuse of judicial discretion. (*State v. Steward,* 219 Kan. 256, 547 P.2d 773; *State v. Pettay,* 216 Kan. 555, 532 P.2d 1289; and *State v. Bradley,* 215 Kan. 642, 527 P.2d 988.)

The classification of felonies for the purpose of sentencing is provided in K.S.A. 21-4501. It reads in part as follows:

"For the purpose of sentencing, the following classes of felonies and terms of imprisonment authorized for each class are established:

\*  \*  \*  \*  \*

"(*b*) Class B, the sentence for which shall be an indeterminate term of imprisonment, the minimum of which shall be fixed by the court at not less than five (5) years nor more than fifteen (15) years and the maximum of which shall be life."

Further, applicable provisions in our habitual criminal act, K.S.A. 21-4504, provide in pertinent part:

"Every person convicted a second or more time of a felony, the punishment for which is confinement in the custody of the director of penal institutions, upon motion of the prosecuting attorney, may be by the trial judge sentenced to an increased punishment as follows:

\*  \*  \*  \*  \*

"(2) If the defendant has previously been convicted of two (2) or more felonies:

"(*a*) The court may fix a minimum sentence of not less than the least nor more than three times the greatest minimum sentence authorized by K.S.A. 1972 Supp. 21-4501 for the crime for which the defendant stands convicted; and

"(*b*) Such court may fix a maximum sentence of not less than the maximum prescribed by K.S.A. 1972 Supp. 21-4501 for such crime, nor more than life."

The record discloses the appellant stood convicted on two counts of aggravated robbery which were both class "B" felonies. Each carried a five to fifteen year minimum sentence with a maximum to life, and the trial judge proceeded to sentence the appellant by awarding the maximum minimum amount or fifteen

years on each count. The trial court also had before it the evidence of two prior felonies from the parole officer's report. Using this evidence, the trial judge tripled each count pursuant to K.S.A. 21-4504 and ordered consecutive sentences. Thus, the trial judge imposed a sentence on the appellant for 90 years to life.

Clearly, the sentence imposed by the trial court did not exceed the statutory limits. Moreover, we presume the trial court followed the statutory directive and considered the factors enumerated in K.S.A. 21-4606. Regardless, the trial court imposed the maximum sentence allowed by law (90 years to life) on the appellant, a twenty-year-old youth, for his conviction of two counts of aggravated robbery of the Maverick Club. In so doing, it used evidence of two prior convictions—one of which resulted in appellant's probation and the other his incarceration at the Kansas State Industrial Reformatory at Hutchinson for less than one year.

Further, in reviewing the appellant's sentence, this court had before it reports and findings of the Kansas State Reception and Diagnostic Center, the presentence report and a verbatim transcript of the sentencing hearing.

The appellant's medical summary indicates he is an adequately oriented, cooperative young man with "no mental or physical distress."

The report of his psychiatric examination dated April 1, 1976, reveals the appellant was not suffering from any "thought disorder." He is described as an adult with an immature personality who tends to deny unpleasant realities. The report concludes in view of the appellant's long sentence, plans for his rehabilitation are "not feasible."

The appellant's counseling report of March 31, 1976, indicates he has an above average intelligence, and he could derive some benefit from taking college courses. In view of his long sentence, however, vocational training was not indicated.

Finally, Mr. Fisher also felt the appellant was intellectually capable of obtaining a college degree. He notes the appellant's difficulties stem from a marked lack of emotional maturity and an inability to control his impulsive behavior. While prison would curtail the potential for further difficulties with the law, Mr. Fisher felt it would do little to facilitate the appellant's emotional maturity. He proposed extensive counseling programs combined

with work and suggested the appellant had at least a "fifty-fifty" chance of being a successful probationer.

We are mindful of the general rules in relation to sentencing enunciated by this court and we adhere to them. In view of the special facts in this case, however, we find the sentence of the trial judge was so arbitrary and unreasonable, it constituted an abuse of judicial discretion.

The sentence imposed by the trial judge must be reversed. We note that when the appellant appears before the trial court for resentencing, its authority is not limited to the presentence report heretofore presented, although it is restricted to the prior convictions heretofore introduced in accordance with the rule set forth in *State v. Daegele,* 206 Kan. 379, 479 P.2d 891; and *Jackson v. State,* 204 Kan. 841, 466 P.2d 305.

## IX.   Newly Discovered Evidence

Finally, the appellant contends the trial court erred in overruling his motion on December 2, 1976, for a new trial based upon newly discovered evidence. The evidence consisted of a robbery of a gas station in the Emporia area by a "salt and pepper" team five months before the Maverick Club robbery.

The rules pertaining to the granting of a new trial for newly discovered evidence have often been stated. A new trial will not be granted unless the evidence is of such materiality, it would be likely to produce a different result upon retrial. (*State v. Johnson,* 222 Kan. 465, 565 P.2d 993 and cases cited therein; and *State v. Jones,* supra.)

Although both robberies were committed by an interracial team, no other similarities existed between the two. The state made no attempt to show the same individuals committed the two robberies, nor did it introduce the first robbery into evidence. In view of the overwhelming amount of circumstantial evidence implicating the appellant, the mere fact another robbery occurred by a black-white team while appellant was incarcerated in the Kansas Industrial Reformatory is simply not exculpatory. The evidence is insufficient to produce a different result on retrial.

The judgment of conviction is affirmed. However, based upon the facts and circumstances in this particular case, the sentence is set aside and vacated. The case is remanded to the lower court with directions that the appellant be resentenced in accordance

with K.S.A. 21-4601 and 21-4606. It is further ordered that resentencing shall be administered by another trial judge to be designated by the Departmental Justice of the Fifth Judicial Department.

McFARLAND, J., dissenting.