NOT DESIGNATED FOR PUBLICATION

No. 116,780

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VICTOR LOGAN,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed October 13, 2017. Affirmed.

*Richard P. Klein*, of Olathe, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., MALONE, J., and LORI A. BOLTON FLEMING, District Judge, assigned.

PER CURIAM: Victor Logan appeals the district court's denial after a full evidentiary hearing of his K.S.A. 60-1507 motion alleging ineffective assistance of counsel. For the reasons stated herein, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 2010, a jury found Logan guilty of one count of aggravated indecent liberties with a child, two counts of indecent liberties with a child, and one count of lewd

and lascivious behavior. The district court sentenced Logan to 171 months' imprisonment. Logan appealed and this court affirmed his convictions in *State v. Logan*, No. 106,542, 2013 WL 5735631 (Kan. App. 2013) (unpublished opinion), *rev. denied* 300 Kan. 1106 (2014). The facts from the underlying case are well-stated in the opinion from Logan's direct appeal. See *Logan*, 2013 WL 5735631, at *1-2.

"Logan married A.T.'s mother in 1997 when A.T. was 5 years old. The couple also had two children together. Over the years, the relationship between Logan and A.T.'s mother became strained and they separated on more than one occasion. But they got back together each time, and Logan was living in the home during the summer of 2007.

"In May 2007, M.O. came to live with A.T.'s family and stayed there for approximately 4 months. One evening during the summer, when A.T.'s mother was not home, M.O. and A.T. were watching TV in the basement. Accordingly to the girls, who were both 15 years old at the time, Logan was also in the basement and began making comments about M.O. being sexy. At some point, Logan tried to get the girls to drink some wine, but they evidently did not do so.

"At some point during the evening, A.T. got a phone call and went upstairs. Logan then asked M.O. to come over to where he was sitting and he tried to kiss her. She refused his advance and went back to sit on the couch. According to M.O., Logan then came over to the couch and pulled out his penis. While masturbating, Logan asked M.O. things like whether she thought she could handle something like that or whether it was too big. Logan started to climb on top of M.O. with his penis still out, but she left the room and went upstairs. M.O. did not tell anyone what happened at that time.

"Sometime in the fall of 2007, A.T. and M.O. were riding in a car with their boyfriends. They began discussing Logan, and A.T. seemed to be upset. Her boyfriend asked her what was wrong, and A.T. told him that Logan had gotten into bed with her. Although she did not go into many details, M.O. stated that Logan had also harassed her.

"Around 4 p.m. on October 19, 2007, A.T.'s mother told her that Logan was moving out for good. In response, A.T. said she had something she needed to tell her mother. She then explained that Logan had touched her inappropriately on two occasions—once when she was 12 and another time about a month prior to the conversation when she was 15. A.T.'s mother called some of her friends to come over for support, and a few hours later A.T.'s mother or one of her friends called the police.

2

"Regarding the first incident, A.T. said that Logan came into her sister's room where she was sleeping and lay behind her under the covers. She indicated that although they both had clothes on, Logan touched her 'private areas' over her clothes with his hand, saying, '"This is how it's going to feel when a boy lays [*sic*] behind you."' According to A.T., she could feel his hard penis against her. Evidently, she got up and went back to her own room. The next morning, Logan said he was sorry and asked her not to tell her mother.

"The second incident occurred when A.T. was 15 years old and she woke up one night with Logan lying behind her in her bed. A.T. said that Logan rubbed her thighs and touched her. Once again, she could feel that his penis was hard. According to A.T., she got up and went to the bathroom for 10 to 15 minutes. When she came out and started to go downstairs to tell her mother, Logan told her nothing had happened and to go back to sleep.

"On October 24, 2007, M.O. told A.T. and her mother about the incident in which Logan had exposed himself to her. A.T.'s mother called the police to report this incident, and a detective investigated the allegations. Ultimately, the State charged Logan with one count of aggravated indecent liberties with a child, two counts of indecent liberties with a child, and one count of lewd and lascivious behavior. The alleged victim in counts I and II was A.T., and the alleged victim in counts III and IV was M.O.

"On May 18, 2008, Logan filed a motion to sever counts I and II from counts III and IV, arguing that the counts did not meet the requirements of K.S.A. 22-3202(1) in order to be joined. The district court, however, found that the facts surrounding the incidents involving A.T. and M.O. were similar enough that the charges did not need to be severed for trial. Accordingly, the case proceeded to a 3-day jury trial beginning on April 26, 2010.

"In addition to the other evidence presented by the defense, Logan testified at trial and he denied sexually assaulting either A.T. or M.O. Specifically, regarding the incident when A.T. was 12, Logan testified that he lived in Missouri with his godmother at that time. He also testified that A.T.'s sister only had a twin bed then, so it would have been physically impossible for the three of them to have been on the bed at the same time. Logan further testified that he never offered A.T. and M.O. wine and that he never exposed his penis to M.O. According to Logan, he did not live at the house during the time M.O. lived there.

3

"After considering the conflicting evidence, the jury found Logan guilty of all four counts. On June 2, 2010, after denying his motions for a new trial and for judgment of acquittal, the district court sentenced Logan to 107 months' imprisonment for count I, 32 months for count II, 32 months for count III, and 6 months for count IV. Counts I, II, and III were ordered to run consecutive, with the sentence for count IV running concurrent with count III. This amounted to a total prison sentence of 171 months."

On July 1, 2015, Logan filed a K.S.A. 60-1507 motion alleging a litany of grounds for relief from his unlawful detention, including the following claims: (1) ineffective assistance of trial counsel for not informing Logan of plea offers; (2) ineffective assistance of trial counsel for not requesting psychological examinations of the victims; (3) ineffective assistance of trial counsel for not properly investigating the case or reviewing discovery with Logan; and (4) ineffective assistance of trial counsel for not calling witnesses. The district court appointed counsel to represent Logan on the motion.

The district court held an evidentiary hearing on Logan's motion on June 3, 2016. Logan testified that Angela Keck, his first attorney on the case, did not inform him of any plea offers and failed to show him some of the evidence. He also testified that Scott Toth, Logan's trial attorney, failed to call Logan's employer, Dale Yeamans, whom Logan believed would have provided exculpatory evidence. Logan also complained that Toth failed to call Josh Neely who would have testified that both victims had previously smoked marijuana and drank alcohol. Logan also testified that Toth did not inform him of any plea offers and failed to show him some of the evidence. He testified that he had asked Toth to request that the victims be subjected to psychiatric evaluations, but Toth did not pursue this request. Finally, Logan complained that both of his attorneys failed to show him a video of one of the victims' interviews at the Sunflower House.

Keck testified that she did discuss a plea offer with Logan. Keck could not remember watching the victim interview video with Logan, but she testified that she presented Logan with a transcript of the video and reviewed the transcript with him. Keck

disputed Logan's claim that she failed to provide discovery, and she testified that she gave Logan all the discovery associated with the case.

Toth testified that when he took over the case, "positions were kind of polarized" as to plea negotiations. However, Toth stated that he did discuss plea options with the prosecutor and with Logan. Toth acknowledged that he never showed Logan the interview video or any audio, but he was under the impression that Logan already had seen the video and heard the audio. Toth personally saw Logan's transcript of the video and recalled Logan discussing the transcript in a letter as it related to the case.

Regarding the proposed character evidence from Neely that on some occasions he had seen both victims smoke marijuana and drink alcohol, Toth found the testimony irrelevant and inadmissible. Toth recalled speaking with Logan's employer, Yeamans, but he could not remember why Yeamans did not testify at trial. Toth testified that he exercised his judgment in not requesting psychiatric evaluations of the victims, but he did not think that such a motion would be granted or would be helpful.

After hearing the evidence, the district court expressly stated that it found counsels' testimony to be more credible than Logan's testimony. Specifically, the district court found that: (1) the fact that counsel provided Logan with the transcript from the interview video was sufficient and not showing him the actual video did not constitute ineffective assistance of counsel; (2) both attorneys did, contrary to Logan's contentions, discuss plea offers with Logan; (3) the proffered testimony of the witnesses whom Logan claimed Toth failed to call was either irrelevant, inadmissible, or was presented through other witnesses; and (4) a motion for psychological evaluations of the victims would not have been granted and could possibly have hurt Logan's defense. Thus, the district court denied Logan's K.S.A. 60-1507 motion. Logan filed a timely notice of appeal.

5

ANALYSIS

On appeal, Logan claims the district court erred in denying his K.S.A. 60-1507 motion. Specifically, Logan's brief makes five claims: (1) ineffective assistance of trial counsel for not informing Logan of plea offers; (2) ineffective assistance of trial counsel for not requesting psychological examinations of the victims; (3) ineffective assistance of trial counsel for not properly investigating the case or reviewing discovery with Logan; (4) ineffective assistance of trial counsel for not calling witnesses; and (5) ineffective assistance of K.S.A. 60-1507 counsel for not establishing "a proper record."

In response, the State asserts that the district court properly denied Logan's K.S.A. 60-1507 motion and the court's findings were supported by substantial competent evidence. The State also argues that Logan cannot claim ineffective assistance of his K.S.A. 60-1507 counsel for the first time on appeal.

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, the appellate court determines whether the district court's findings are supported by substantial competent evidence and determines whether the factual findings support the court's legal conclusions; the appellate court applies a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

6

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. See *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013).

*Failure to discuss plea offers*

Logan contends he received ineffective assistance of counsel because his attorneys did not apprise him of plea offers. He testified at the evidentiary hearing that neither Keck nor Toth told him of plea offers. While acknowledging that both Keck and Toth disputed this assertion at the hearing, Logan asserts that neither counsel had documentation in their files to support their testimony about the plea discussions.

The State points out that both Keck and Toth testified they had plea discussions with Logan. The State asserts the record supports the district court's factual finding that Keck and Toth were more credible than Logan on this issue. Lastly, the State maintains the record shows that "Logan had no desire to engage in reasonable plea negotiations"; thus, Logan was not prejudiced by any failure of counsel to discuss plea options.

In rejecting Logan's claim that Keck failed to discuss plea offers, the judge stated:

"As far as providing no offer of a plea agreement, again, [Keck's] recollection is different than [Logan's], but that may not be the important part here. Her recollection was it was a very poor offer and . . . was not one that you [would have] considered. She said that your position was that you were innocent, that you wanted a trial, and that that's what was going to take place."

7

In rejecting Logan's claim against Toth on this point, the judge stated: "Mr. Toth said much the same thing as Ms. Keck and that was, unless it was a misdemeanor for time served, you weren't going to be interested [in a plea] because you maintained your innocence throughout." Thus, the district court found that counsel discussed plea offers with Logan but he was not interested in a plea. This finding is supported by the testimony of both attorneys, who the district court chose to believe. When the district court's factual findings are challenged for insufficiency of the evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014). We conclude that substantial competent evidence supports the district court's findings that counsel were not ineffective in failing to discuss plea offers with Logan.

*Failure to request a psychological evaluation of the victims*

Next, Logan claims that his trial counsel were ineffective for not requesting psychological examinations of the victims. Logan gives an overview of the standard for such a motion as set forth in *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), and he claims such a motion would have been proper in this case. Logan claims this error prejudiced his right to a fair trial.

The State points out that the district court found that a *Gregg* motion would not have been appropriate under the facts of this case. The State maintains that Logan's demand for a *Gregg* motion was a mere fishing expedition, which is not a proper basis for such a motion. Lastly, the State claims that even if counsels' performance was deficient for not filing a *Gregg* motion, Logan was not prejudiced by the failure.

In rejecting Logan's claim on this issue, the judge stated:

8

> "From everything that appears—I do not believe—let's say that even if [the victims] were smoking marijuana and drinking alcohol and doing these other things or that [M.O.] was suicidal, those three elements by themselves would not rise to the occasion that a *Gregg* motion should be granted and a [psychological] evaluation presented.
>
> "And, in fact, let me tell you, it is something that could have backfired on you [because it would have resulted in additional evidence for the State]."

"[A] defendant is entitled to a psychological examination of a complaining witness in a sex crime case only where compelling circumstances justify such an examination." *State v. Eddy*, 299 Kan. 29, Syl. ¶ 4, 321 P.3d 12 (2014). In order to determine whether a compelling circumstance exists, a court looks to the totality of the circumstances. 299 Kan. 29, Syl. ¶ 4. The following list of nonexclusive factors may be considered:

> "(1) whether there is corroborating evidence of the complaining witness' version of the facts, (2) whether the complaining witness demonstrates mental instability, (3) whether the complaining witness demonstrates a lack of veracity, (4) whether the complaining witness has made similar charges against others that were proven to be false, (5) whether the defendant's motion for an evaluation appears to be a fishing expedition, and (6) whether the complaining witness provides an unusual response when questioned about his or her understanding of what it means to tell the truth." 299 Kan. 29, Syl. ¶ 5.

Logan claims both victims' family problems, a lack of physical evidence, and one victim, M.O., supposedly making a previous unfounded sexual misconduct claim along with having been in "a residential mental health facility" all justified his request for psychological evaluations of the victims. We disagree. The only circumstance Logan raises to help his case is the lack of physical evidence, which is the first factor in the list of nonexclusive factors considered by our Supreme Court. See 299 Kan. 29, Syl. ¶ 5. Logan's allegation that both victims have "family problems" does not rise to the level of a "mental instability" to support a psychological evaluation of the victims. See 299 Kan. 29, Syl. ¶ 5.

Lastly, Logan claims M.O. had made a previous unfounded sexual misconduct claim along with having been in "a residential mental health facility." However, Logan presented no evidence to support these claims other than his own testimony. Logan was free to present evidence regarding this point at his K.S.A. 60-1507 hearing, or at least more substantial evidence than his own testimony, but he failed to do so. We conclude that substantial competent evidence supports the district court's finding that it was unlikely that a psychological evaluation of either complaining witness was proper in this case. Thus, it cannot be said that Logan's counsel were ineffective for not requesting psychological examinations of the victims.

*Failure to properly investigate the case or review discovery with Logan*

Logan contends his counsel were ineffective for not reviewing discovery with him and not properly investigating the case. Logan's claim on this point focuses on his contention that both attorneys failed to show him the Sunflower House interview video. The State asserts that Logan was provided with a transcript of the Sunflower House interview, something to which both of his attorneys testified. The State notes that the district court found the transcript was sufficient. Finally, the State contends that even if counsel were deficient in this regard, Logan was not prejudiced.

In rejecting Logan's claim on this issue, the judge stated:

"[Keck] agrees that she did not provide the video to you or she doesn't recall providing the video to you, but does recall providing you a transcript. Mr. Toth remembers you having a transcript and him having a transcript of the—as you call it DCF, that's the Sunflower House interview.
"And Mr. Toth recalls a reference in a letter you made about the transcript to him for the purposes of impeaching one of the witnesses.
"So the fact that you didn't get to see [the video] may be upsetting to you, but it's not ineffective assistance of counsel, especially when you have the transcripts."

10

The district court's findings that counsel provided the transcript to Logan and that the transcript was sufficient in lieu of the video are supported by substantial competent evidence in the record, specifically, the testimony of both counsel who the district court chose to believe. Thus, the district court did not err in rejecting Logan's ineffective assistance of counsel claim on this issue.

*Failure to call witnesses*

Logan claims that Toth was ineffective for not calling certain witnesses at his trial. Logan wanted to call his employer, Yeamans, who would have testified that because of Logan's transportation problems, Yeamans did not believe that Logan could have been at home when some of the incidents with the victims allegedly occurred. Yeamans also would have testified that because Logan did not have a car in 2007, he could not have driven A.T. to school the day after she was molested as A.T. had testified. Logan also wanted to call Neely, who would have testified that both victims had previously smoked marijuana and drank alcohol. The State asserts that the district court was correct in finding that the testimony of Yeamans and Neely was either irrelevant, inadmissible, or was presented through other witnesses.

In rejecting Logan's claim that Yeamans was a material witness, the judge stated:

> "But what you were attempting to get from the Yeamans was that you did not have a car and didn't have access to drive and that you would not be able to go to locations such as the home where this allegedly occurred or other places, but that same information came out.
> "First of all, he only knows—by the way, Mr. Yeamans only knows that from maybe observations on a limited basis or what you've told me. That same information came out apparently through your godmother who did testify that you didn't have access—actually the evidence was better because I think the evidence was that you stayed with her, which is something that Mr. Yeamans could not say."

In rejecting Logan's claim that Neely was a material witness, the judge stated: "And Mr. [Neely] would say that one or both of the victims smoked marijuana and that he knew it and others knew it . . . . All he was going to say was that they used marijuana, and that in and of itself is not admissible." We agree with the district court that for purposes of discrediting a witness, evidence of the witness' prior use of drugs or alcohol is inadmissible unless it is proven that the witness was under the influence at the time of the occurrence or at the time of the trial or that his or her mind, memory, or powers of observation were affected by the habit. See *State v. Coe*, 223 Kan. 153, 162-63, 574 P.2d 929 (1977).

Here, Neely's testimony that he previously had observed the victims smoking marijuana and drinking alcohol, by itself, would have been inadmissible. Likewise, Yeamans' proffered testimony that Logan could not have been at home when some of the incidents allegedly occurred because of Logan's transportation problems was speculative, at best. The district court's finding that the substance of Yeamans' testimony was better presented through Logan's godmother who Logan was staying with at the time was supported by substantial competent evidence. Thus, Logan has failed to establish that Toth was ineffective for failing to call these witnesses at trial.

*Logan's claim that his K.S.A. 60-1507 counsel was ineffective*

Finally, Logan contends for the first time on appeal that his K.S.A. 60-1507 counsel was ineffective for not establishing a proper record. Specifically, Logan asserts that his K.S.A. 60-1507 counsel could have more effectively cross-examined his trial counsel at the evidentiary hearing if his K.S.A. 60-1507 counsel had subpoenaed his trial counsels' records prior to the hearing. Logan admits that an ineffective assistance of counsel claim is normally not addressed for the first time on direct appeal. However, he requests a remand for a hearing on this issue pursuant to *State v. Van Cleave*, 239 Kan. 117, 120, 716 P.2d 580 (1986).

The State asserts that Logan cannot raise this issue for the first time on appeal. The State maintains that instead of Logan requesting a remand for a *Van Cleave* hearing, he has the option of filing a separate claim against his K.S.A. 60-1507 counsel.

Generally, an ineffective assistance of counsel claim cannot be raised for the first time on appeal. *Trotter v. State*, 288 Kan. 112, Syl. ¶ 10, 200 P.3d 1236 (2009). "Under extraordinary circumstances an appellate court may consider a claim of ineffective assistance of counsel for the first time on appeal if there are no factual issues and the two-prong ineffective assistance of counsel test can be applied as a matter of law based upon the appellate record." 288 Kan. 112, Syl. ¶ 11. An appellate court has discretion to remand for a *Van Cleave* hearing if the defendant has "'set forth with some specificity sufficient details of the evidence to be presented to the trial court.'" *Van Cleave*, 239 Kan. at 120 (quoting *State v. Shepherd*, 232 Kan. 614, 620, 657 P.2d 1112 [1983]).

Here, Logan has not presented sufficient details for a remand. Logan claims his K.S.A. 60-1507 counsel should have subpoenaed his trial counsels' records, yet he offers little information on what would have been found through such a subpoena. While Logan is correct that the records may have been helpful in refreshing the memory of his trial counsel, Logan is not clear on how this would have helped his case. We conclude that Logan has failed to present sufficient details of the evidence to be presented in district court for us to remand for a *Van Cleave* hearing. See *Van Cleave*, 239 Kan. at 120.

Affirmed.