**Curtis C. SIMMS, Petitioner,**

v.

**Hoyt C. CUPP, Superintendent, Oregon State Penitentiary, Respondent.**

**Civ. No. 70–898.**

United States District Court,
D. Oregon.

March 30, 1972.

James P. Harrang, Laird Kirkpatrick, Johnson, Johnson & Harrang, Eugene, Or., for petitioner.

Lee Johnson, Atty. Gen., Jim Russell, Asst. Atty. Gen., Salem, Or., for respondent.

## OPINION

SOLOMON, District Judge:

Curtis Charles Simms (petitioner) was tried in the Multnomah County Circuit Court of Oregon in July, 1968, for murder. A jury found him guilty of manslaughter, and the court sentenced him to 11 years in the Oregon State Penitentiary. He has served almost four years of that sentence. In this habeas corpus petition he contends that, during his trial, the Portland Police Department and the District Attorney for Multnomah County, Oregon, suppressed evidence favorable to him in violation of his federally protected constitutional rights. All State remedies have been exhausted.

On April 2, 1968, two minors, David Kaiser, 12, and Joan Turner, 16, attacked Mrs. Alice Vannet, aged 87, grabbed her purse, threw her to the ground, and ran. Mrs. Vannet suffered a concussion and died that evening.

Kaiser and Turner both testified at the trial. They testified that they had spent the day riding with Simms in his car. At about 6:00 P.M., Kaiser told Simms to stop his car, then ran around the corner with Turner to Mrs. Vannet's house, snatched her purse, and returned to the car. Simms drove them away.

The State prosecuted Simms on the theory that he was an accomplice. Simms denied any prior knowledge of his companions' intent to commit the crime. He said he suspected nothing until Kaiser and Turner returned to the car with the purse.

Simms, who was 21 at the time, was prosecuted as an adult. Kaiser and Turner were prosecuted as juveniles and remanded to State custody for indeterminate periods.

Kaiser and Turner both testified that Simms drove the car in another purse snatch that day. They testified that David Kaiser had stolen another woman's purse an hour and a half before the attack on Mrs. Vannet.

A crucial issue at Simms' trial was Simms' knowledge of the plan to steal Mrs. Vannet's purse. Testimony that Simms had participated in a similar crime earlier that day was significant.

Therefore, the defense tried to show that Kaiser's and Turner's story of the earlier purse snatch was a fabrication. They had earlier told friends that Simms had no knowledge of their plans to rob Mrs. Vannet. Their other testimony was often inconsistent and contradictory. There was evidence that Kaiser was unfriendly to Simms and planned to get even with Simms by lying at his trial. The defense also showed that Kaiser and Turner probably hoped for an early release from custody as delinquents by providing a story which would bolster the State's case.

If the jury believed that Kaiser and Turner were lying about the earlier purse snatch, they might have found that Simms was only an innocent bystander when the robbery and murder took place.

In rebuttal, the State relied on the testimony of Marie Brandon to corroborate Kaiser's and Turner's story of the earlier purse snatch. Mrs. Brandon had reported her purse stolen at about 5:30 P.M. on the day of the murder. At the

trial, the District Attorney permitted Mrs. Brandon to testify only that her assailant had been a Negro boy.[1] He did not bring out that Mrs. Brandon had told him that she could not identify David Kaiser as her assailant.

Mrs. Brandon had told the police that her assailant was light skinned, between 5' 6" and 5' 7" tall, and between 14 and 16 years old. David Kaiser was dark skinned, 5' 4", and 12 years old.

During an interview, the District Attorney asked Mrs. Brandon whether her assailant was a small boy. She said he was not a small boy, but that he was tall and slender. The prosecution did not permit Mrs. Brandon to see David Kaiser or his picture.

Defense counsel was surprised by Mrs. Brandon's testimony, and did not press the issue of identification on cross-examination. Earlier, he had requested the police to produce the files on all other purse snatches which occurred on April 2nd. A police report of the assault on Mrs. Brandon did exist, but it was not in the central files when the police searched them. If defense counsel had seen the police report with Mrs. Brandon's description of her assailant, or if he had known Mrs. Brandon's full recollection of the incident as she related it to the District Attorney, defense counsel would have cross-examined Mrs. Brandon.

The State contends that there is no evidence that any facts were actually suppressed. The District Attorney in his deposition testified that Mrs. Brandon appeared to be a relatively "scatterbrained" old lady who had difficulty speaking English and recalling incidents clearly. Mrs. Brandon's testimony at trial and her deposition taken one month after the trial do not support his conclusion.

■ ■ If the District Attorney believed Mrs. Brandon's recollection to be unreliable, he should not have permitted her to testify at the trial without disclosing that her description of her assailant did not fit Kaiser. The knowing presentation of false testimony by the State violates due process. Rhinehart v. Rhay, 440 F.2d 718 (9th Cir. 1971), cert. denied 404 U.S. 825, 92 S.Ct. 53, 30 L.Ed. 2d 53 (1971). There is no distinction between false testimony and the presentation of a witness' partial testimony which, when considered in isolation, creates a distorted picture of the facts as the witness saw them.

■ I find that the State had in its possession exculpatory evidence material to the issue of petitioner's guilt. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962), requires that such evidence be disclosed.

■ The rule applies even when the defense has not requested that the ex-

---

1. "Q. Did you see who took [your purse]?
"A. No. I didn't see who took it at the time. Somebody came up behind me and yanked on the purse, and then they couldn't get it because I was—it was hanging like this and I had my arms around my groceries, and then he grabbed it like this and he yanked it off, and I lost my balance and I fell to the sidewalk, and I bruised my knee and my groceries fell in the flower bed.
"Q. Did you then see who had your purse?
"A. Yes. I picked myself up and—
"Q. Well, could you describe him? Was he white or Negro?
"A. He was a Negro boy, about 15, 16 years old—

"Q. All right.
"A. —I should judge, I don't know.
"Q. All right. Where did he go after taking your purse?
"A. He run up to the corner of 9th and Emerson and turned around the corner and disappeared.
"Q. All right. Did you ever see your purse again?
"A. No, sir.
"Q. Now, this was about a quarter to 6?
"A. It was about 5:30, but, when the officer came, it was about a quarter to 6 or five minutes to 6 in the evening." State of Oregon v. Curtis Charles Simms, No. C-50821, Transcript of Record at 489-490.

culpatory evidence be disclosed. Barbee v. Warden, 331 F.2d 842 (4th Cir. 1964).

■ ■ Regardless of the good faith of the police or the prosecution, where the evidence suppressed may have had an effect on the outcome of the trial, the verdict may not stand. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). I find that such evidence may have affected the verdict of the jury.

Petitioner's application for a writ of habeas corpus is granted. The State of Oregon is ordered to release him from custody within 30 days unless prior to that date the State of Oregon grants petitioner a new trial or unless the respondent obtains a stay pending appeal.

This opinion shall constitute findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).