No. 47,415

STATE OF KANSAS, *Appellee*, v. THOMAS O. KELLY, *Appellant*.

(531 P. 2d 60)

Opinion filed January 25, 1975.

*Charles E. Worden,* of Topeka, argued the cause and was on the brief for the appellant.

*Donald P. Morrison,* assistant district attorney, argued the cause, and *Vern Miller,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Thomas O. Kelly appeals from a conviction for the theft of over $50.00 by threat (K. S. A. 1973 Supp. 21-3701 [*c*]). He attacks the conviction on the sole ground that the prosecution violated his constitutional right of due process by withholding evidence during the trial.

A brief summary of facts will be sufficient for the purposes of this appeal. James Ruppelius was a truck driver, a resident of Rochester, Minnesota. He parked his truck at the "Skelly Truck Shop" on the west edge of Topeka, Kansas. It was after 1:30 a. m. on September

18, 1972, when he arrived. While browsing through some books in a bookstand he was approached by two women who invited him to a party. The two women provided the transportation. The car was driven by the defendant. They arrived at a house at 1710 Fillmore Street. Ruppelius testified that he stayed in the house approximately fifteen minutes, that no party was in progress and that he then accepted an offer by one of the women to return him to the truck stop. On the trip back he was accompanied by the defendant and the two women plus another man whom he did not know. His companions proceeded to drive him into the country to a place near the Blackburn Nursery. They stopped the car, took approximately $125.00 from his person by threat and then drove off, leaving him in the middle of the road. Ruppelius made his way on foot to a telephone, called the police and gave them a description of the car and the occupants. The car was picked up by the police at 3:00 a. m. that same morning. The defendant was driving and he was accompanied by a man and the two women.

The defendant and the two women were charged and tried together and each had separate counsel. Ruppelius testified for the prosecution and was subjected to a searching cross-examination by all three defense counsel. The cross-examination was directed toward establishing that Ruppelius accompanied the women to 1710 Fillmore to engage in sexual relations. While being cross-examined Ruppelius repeatedly and categorically denied having sexual relations with the women.

After Ruppelius testified at the trial, he was excused from further attendance so he might return to his home in Minnesota. Thereafter the prosecutor learned from the investigating officers that Ruppelius had previously admitted to having sexual intercourse. It is not clear from the record whether this admission was in the form of oral or written statements, but it is agreed the prosecutor had no knowledge of the prior inconsistent statements until after Ruppelius had been excused from further attendance at the trial.

On learning of the inconsistency the prosecutor put the investigating officers on the witness stand and they testified fully as to the prior inconsistent statements. Thereafter, the defense put Leonard Keeling on the stand and he testified he was present at 1710 Fillmore Street when Ruppelius and the women arrived. He further testified that Ruppelius spent a half hour in the bedroom with one of the women before leaving the premises.

The defendant was convicted. On a motion for new trial he argued that he was denied due process of law because the prosecution knowingly used perjured testimony on a material issue and because the prosecution failed to make timely disclosure of the prior inconsistent statements. The trial court denied the motion and found that the prosecution did not withhold or suppress any evidence. It further found that the defendant's conviction did not rest on perjured testimony. This appeal followed.

Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. To justify a reversal of a conviction for failure to disclose evidence the evidence withheld by the prosecution must be clearly and unquestionably exculpatory and the withholding of the evidence must be clearly prejudicial to the defendant. (*State v. Hill*, 211 Kan. 287, Syl. ¶¶ 2, 3, 507 P. 2d 342.) This rule which was recognized in *Hill* appears to be an outgrowth of several federal decisions which we will examine in order to evaluate the present contention of the defendant.

In *Mooney v. Holohan*, 294 U. S. 103, 79 L. Ed. 791, 55 S. Ct. 340, reh. den. 294 U. S. 732, 79 L. Ed. 1261, 55 S. Ct. 511, it was held that a conviction which is obtained by the use of perjured testimony by the prosecutor violates the constitutional requirement of due process and justifies the granting of a new trial. The testimony withheld or suppressed by the prosecution in *Mooney* would have been material and favorable to the defense because it would have tended to overcome the unfavorable perjured testimony.

The rule announced in *Mooney* was clarified somewhat in *Pyle v. Kansas*, 317 U. S. 213, 87 L. Ed. 214, 63 S. Ct. 177, where it is stated:

". . . Petitioner's papers are inexpertly drawn but they do set forth allegations that his imprisonment resulted from perjured testimony, *knowingly* used by the State authorities to obtain his conviction, and from the deliberate suppression by those same authorities of evidence favorable to him. These allegations sufficiently charge a deprivation of rights guaranteed by the Federal Constitution, and, if proven, would entitle petitioner to release from his present custody. . . ." (317 U. S. at p. 215. Emphasis supplied.)

Thereafter the high court in *Brady v. Maryland*, 373 U. S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, expanded the previous rule by recognizing that even a negligent or passive failure to disclose material evidence favorable to the defense may be sufficient to justify a new trial. In *Brady* the defendant's attorney requested permission to examine extra-judicial statements made by a co-defendant. The request was made prior to trial. Several written statements were

provided by the prosecution but one, which indicated that defendant merely played a passive role in the perpetration of the crime, was overlooked until after conviction. The high court held:

". . . [T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bad faith of the prosecution." (373 U. S. at p. 87.)

The language "upon request" in the above quote has led to some confusion. It has been argued that a request for information is a condition precedent to the prosecution's duty to supply exculpatory evidence. Courts, however, have generally held that a duty to disclose exculpatory evidence to the defense exists even where no request has been made. (See *United States v. Wilkins,* 326 F. 2d 135 [2nd Cir. 1964]; *United States v. Hibler,* 463 F. 2d 455 [9th Cir. [1972]; *Simms v. Cupp,* 354 F. Supp. 698 [D. Or. 1972].)

Rules developed in *Mooney, Pyle* and *Brady* were further clarified in *United States v. Keogh,* 391 F. 2d 138, 34 A. L. R. 3d 1 (2nd Cir. 1968). In *Keogh* the court categorized the cases involving suppression of evidence into three classifications: (1) where there is a deliberate bad faith suppression for the purpose of obstructing the defense or intentional failure to disclose evidence which has high probative value and which could not have escaped the prosecutor's attention; (2) where there is a deliberate refusal to honor a request for evidence where the evidence is material to guilt or punishment, irrespective of the prosecutor's good or bad faith in refusing the request; and (3) where suppression was not deliberate and no request for evidence was made, but where hindsight discloses that it was so material that the defense could have put the evidence to significant use.

The court stated in *Keogh* that in the third classification the evidence withheld must have a high degree of materiality relating to a defendant's guilt or punishment if the conviction is to be found constitutionally infirm. In *Keogh,* speaking of this third classification, the court said:

". . . While we do not dispute that relief may sometimes be granted even in such cases, the standard of materiality must be considerably higher. . . . Deliberate prosecutorial misconduct is presumably infrequent; to invalidate convictions in the few cases where this is proved, even on a fairly low showing of materiality, will have a relatively small impact on the desired finality of judgments and will deter conduct undermining the integrity of the judicial system. The request cases also stand on a special footing; the prosecu-

tion knows of the defense's interest and, if it has failed to honor this even in good faith, it has only itself to blame. Failure to appreciate the use to which the defense could·place evidence in the prosecution's hands, or forgetfulness that it exists when a development in the trial has given it a new importance, are quite different. Since this must happen to the most scrupulous prosecutors and the issue of deterrence scarcely arises, the problems of the courts and the wider interests of society unite to require a substantially higher probability that disclosure of the evidence to the defense would have altered the result. . . ." (391 F. 2d at pp. 147, 148.)

This subject is futher covered in the annotation, Withholding Evidence—By Prosecution, 34 A. L. R. 3d 16.

In *State v. Hill,* supra, this court considered a case falling in the second classification categorized in *Keogh.* In *Hill* the defense had requested and was refused copies of statements of witnesses prior to trial. The trial court did require production of all statements of the defendant and the names and addresses of all other witnesses. It was pointed out in the opinion that our statute, K. S. A. 22-3213 (Weeks), preserves the confidentiality of statements of witnesses, other than the defendant's, until after the witnesses have testified. Such pretrial statements of witnesses are to be made available to the defense on request after the witnesses have testified. It was further pointed out in *Hill* that even broader discovery lies within the discretion of the trial court under K. S. A. 22-3212. (See *State v. Hill,* supra, at page 294.)

This court in *Hill* did, however, recognize the three classifications of cases set forth in *Keogh* but applied the limitations appearing in our statutes (K. S. A. 22-3212 and 22-3213 [Weeks]). Under our decision in *Hill,* in order to constitute reversible error when there has been a deliberate refusal of the prosecution to honor a request for the written statements of witnesses, the request must come after the witnesses have testified, the evidence withheld must be clearly and unquestionably exculpatory and the withholding of the evidence must be clearly prejudicial. *Hill* is one of the "request" cases in the second classification categorized in *Keogh.*

In the present case appellant does not contend the prosecution deliberately and in bad faith withheld the evidence. So this case does not fall into the "bad faith" classification which requires a fairly low showing of materiality and prejudice. In the present case there was no request for the evidence made upon the prosecution and there could be no deliberate refusal to honor a request. So this case does not fall into the "request" classification, which under *Hill*

requires a clear showing that the evidence withheld was exculpatory and prejudicial. Therefore, the appellant's present claim that evidence was withheld by the prosecution must fall into the third classification discussed in *Keogh* and recognized in *Hill,* the "oversight" classification.

The rule to be applied in this "oversight" classification of cases may be stated as follows: When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant.

In the present case the circumstances of the alleged withholding were examined by the trial court on the motion for new trial. The trial court found that the prosecution did not withhold or suppress the evidence. We agree with that finding.

The prosecutor upon learning of these prior inconsistent statements, during the progress of the trial, immediately rectified this oversight by placing the investigating officers on the witness stand. The officers were questioned and they testified fully and frankly concerning the extra-judicial statements of Ruppelius concerning his sexual activities on the morning in question. The jury was given all evidence available to the prosecution before it retired to consider the verdict. The questionable reliability of the testimony of Ruppelius at the trial was fully exposed to the jury by the prosecutor.

This might well dispose of the matter but let us assume *arguendo* that evidence was withheld. Two additional requirements must be met before the appellant would be entitled to a new trial. First, could the prior inconsistent statements of the victim be exculpatory when they tended only to impeach the credibility of the victim?

It has generally been held that evidence is exculpatory if it tends to disprove a fact in issue which is material to guilt or punishment. (*Brady v. Maryland,* supra.) However, this rule was somewhat expanded in *Giglio v. United States,* 405 U. S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763, to include evidence bearing upon the credibility of a key witness on an important issue in the case. In *Giglio* it was held that credibility may be a material issue when the prosecution's case rests almost entirely upon the testimony of that witness. In such a

case the reliability of the testimony of the witness may well be a determining factor by which the jury arrives at guilt or punishment. For this reason evidence materially affecting credibility may fall under the heading of exculpatory evidence.

In the present case Ruppelius was the victim and the only witness available to the state to establish the crime. His reliability was an essential jury consideration upon which guilt and punishment would rest. Once it was established that Ruppelius was not a reliable witness the jury would be free to disregard his testimony. If he engaged in sexual intercourse with the women it might be inferred that he first engaged their services as prostitutes, became disenchanted with his bargain, refused to pay and was then forced to pay for their services. We are of the opinion that under the guidelines of *Giglio* the prior inconsistent statements of Ruppelius in this case, if withheld, might rise to the level of exculpatory evidence which would have altered the result of the trial.

Now let us examine the second additional requirement. Was the evidence so material to the outcome of this particular case that its withholding, if any, would be clearly prejudicial?

Under the facts previously outlined it appears the prosecution placed the prior inconsistent statements of Ruppelius in evidence by the testimony of two police officers. In addition the defendant, by calling an independent witness (Keeling), was able to impeach the testimony of Ruppelius on the subject matter in question. The credibility of the witness was, therefore, seriously eroded on the question of whether he did engage in sexual intercourse with the women. It does not appear that the rights of the defendant were prejudiced. He was only deprived of an opportunity to recall Ruppelius to the witness stand and further confront him with the prior inconsistent statements he had made to the officers. We cannot say that the extent of his deprivation would be sufficient to require a new trial.

Accordingly, we hold the defendant-appellant's claim, that material exculpatory evidence was wrongfully withheld by the prosecution in violation of constitutional due process, is not established by the record.

The judgment is affirmed.