No. 50,890

STATE OF KANSAS, *Appellee,* v. CLEOPHAS C. PHILLIPS, JR., *Appellant.*

(607 P.2d 56)

Opinion filed March 1, 1980.

*Russell Shultz,* of Shultz, Fry & Fisher, of Wichita, argued the cause and was on the brief for the appellant.

*Michael Barbara,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal from a jury conviction of aggravated kidnapping (K.S.A. 21-3421) and felony murder (K.S.A. 21-3401). The defendant was sentenced to two life terms. He appeals.

On August 1, 1978, at 5:00 a.m., Leroy Jenkins was awakened by the defendant, Cleophas C. Phillips, Jr., knocking on his door. Phillips asked Jenkins to go fishing. Jenkins agreed and followed Phillips to his truck which was parked outside Jenkins' home. In the ensuing conversation, Phillips inquired of Jenkins as to the whereabouts of one Michael Mitchell. Phillips displayed an automatic pistol and insisted Jenkins show him where Mitchell lived. There is no evidence Jenkins was threatened by the gun. The two drove the truck to Mitchell's home. Once there, Phillips went to the door and got Mitchell out of bed, saying the three needed to talk. He did not display the gun to Mitchell at that time. Mitchell and the defendant returned to the truck. As he approached the truck, Mitchell inquired of Jenkins, who was sitting

in the passenger's side, what this was all about. Mitchell sat down on the curb with Phillips and the three of them talked a short time, while Jenkins remained in the truck. At this juncture, Phillips said he wanted to talk to Mitchell and they went to the back of the pickup and held a brief conversation. Jenkins stated the two then came around to the driver's side of the truck. Phillips told Mitchell to get in the pickup and brandished the pistol. Mitchell got in and thereafter, Phillips proceeded to pistol whip him and to hit him about the face and head with a whiskey bottle. Jenkins testified he asked Phillips to leave Mitchell alone but Phillips ordered him out of the truck. Jenkins testified he got out of the pickup on the passenger's side, walked behind the vehicle and across the street from where he observed Phillips outside of the open door of the pickup on the driver's side with Mitchell, bent over on the seat, partially out of the truck. Jenkins further testified Cleophas was making comments to the effect that Mitchell was trying to seduce Phillips' ex-wife and his sister. Jenkins approached the truck and again attempted to tell Phillips to stop hitting Mitchell, but the defendant ordered him away. Cleophas struck one more blow with the pistol to Mitchell's head and the gun fired the fatal shot. Jenkins testified as the pistol came down and fired it appeared to him the blow was the same as the others and Phillips had no intent to fire the gun. He stated Phillips appeared shocked and held Mitchell's head up. Phillips propped Mitchell up in the pickup and sped to the hospital to obtain medical treatment; however, Mitchell died.

The shooting was reported to the police, immediately following the shot, by Mitchell's girl friend, Betty Glenn, who heard gunfire and rushed from her apartment to the pickup to investigate. She was able to see that Mitchell was bleeding and wounded. Phillips hurriedly drove away just as she arrived and was met by the police at the hospital. He again brandished the pistol but later surrendered without a struggle.

The defendant was charged with premeditated murder, felony murder, aggravated assault and aggravated kidnapping. He was convicted of felony murder and aggravated kidnapping.

Defendant's first issue on appeal is the State's failure to comply with a court order to produce a prior taped statement of a witness. Leroy Jenkins was the primary witness for the prosecution. He testified about the events which occurred immediately prior to

and during the time of the alleged murder. Among other things, Jenkins testified at trial that Phillips forced Mitchell at gun point to get into his truck and confined him there for the purpose of inflicting bodily harm on him. He testified defendant had been drinking but his state of intoxication caused no visible change from his normal behavior pattern. On cross-examination, Jenkins referred to a taped statement he gave the police on August 1, 1978. The defense requested production of the tape. It had been provided only with a taped statement Jenkins made twelve days after the shooting and knew nothing of a prior statement. The court ordered the tape be furnished to defendant that evening. The order was not complied with.

After both parties had rested, prior to the giving of instructions, the defendant moved to strike the testimony of Jenkins because the State had not produced the August 1 tape as ordered. At that time it was revealed the prosecutor had had the tape in his possession but had not revealed it to the defendant's attorney because he considered it inaudible and because the tape had not again been requested by the defendant. Defendant was given the opportunity to hear the tape at that time but refused. The trial court overruled the motion to strike.

Defendant contends the unrevealed tape differs significantly from Jenkins' second statement and his testimony at trial. He contends Jenkins said nothing in his first statement about defendant yelling at Mitchell and ordering him into the truck. Rather, Jenkins said he couldn't hear what, if anything, was said. On the other hand, at trial Jenkins testified Phillips brandished a gun and ordered Mitchell into the truck. Jenkins admitted in his first statement the defendant was talking out of his head and not making sense, while at trial he testified Phillips was acting normal. Defendant also contends the unproduced tape revealed Jenkins had prior interviews and discussions with the police, notes and writings which were also not produced pursuant to the general discovery order filed before the trial.

Defendant filed a motion for a new trial raising these issues again, and again the court denied the motion, this time because defendant was given an opportunity to listen to the tape prior to submitting the case to the jury. The controversial tape was marked Exhibit # 22 and made a part of the record on appeal. We have listened to it and read the transcription. We find the tape

completely audible and at variance with Jenkins' trial testimony and to a lesser degree his second statement. Also, it is apparent from listening to the tape that Leroy Jenkins had talked to the police before he made the August 1 tape. Defendant was not informed of those discussions.

The court ordered all statements of witnesses and police notes of statements delivered to the defendant. None were provided. It is clear defendant spoke with the police prior to making the August 1 statement. If there are any notes of that meeting, they should have been provided pursuant to the general discovery order.

With regard to the production of the first tape for use at cross-examination, we stated in *State v. Wilkins,* 220 Kan. 735, 741, 556 P.2d 424 (1976):

"A trial court in exercising its discretion in ruling upon a motion to strike the testimony of a witness for failure of the prosecution to produce a statement pursuant to K.S.A. 22-3213(2), should consider why the statement was not produced; if it was lost, the facts and circumstances surrounding the loss; the negligence or fault on the part of the state; the nature, relevance and importance of the statement; the risk of prejudice to the defendant; the essentiality of the testimony to the state; and the other evidence in the case. The administration of the 'Little Jencks Act' is thus entrusted to the sound discretion of the trial judges, who must use the 'balancing approach' described in the cited cases in determining what sanctions, if any, to apply."

In *State v. Kelly,* 216 Kan. 31, 35, 531 P.2d 60 (1975), we stated:

"It was pointed out in the opinion [*State v. Hill,* 211 Kan. 287, 507 P.2d 342 (1973)] that our statute, K.S.A. 22-3213 (Weeks), preserves the confidentiality of statements of witnesses, other than the defendant's, until after the witnesses have testified. Such pretrial statements of witnesses are to be made available to the defense on request after the witnesses have testified.

". . . Under our decision in *Hill,* in order to constitute reversible error when there has been a deliberate refusal of the prosecution to honor a request for the written statements of witnesses, the request must come after the witnesses have testified, the evidence withheld must be clearly and unquestionably exculpatory and the withholding of the evidence must be clearly prejudicial."

*Kelly* goes on to state when the court is dealing with the credibility of an eyewitness to the crime and the prosecution's case is built entirely on the testimony of that witness, credibility may become a material issue. In that instance, the "reliability of the testimony of the witness may well be a determining factor by which the jury arrives at guilt or punishment. For this reason

evidence materially affecting credibility may fall under the heading of exculpatory evidence." *State v. Kelly,* 216 Kan. at 36-37.

It is apparent the evidence in this case was purposefully and willfully withheld by the prosecution in violation of the court's order to produce it. At the argument on defendant's motion to strike Jenkins' testimony, the prosecutor stated:

"Now, I had in my possession in the courtroom for the last two days of the State's case that earlier taped statement plus the taped statements—all of the taped statements associated with this case. Mr. Shultz never said a word to me about listening to that taped statement, and I think that while the State is in the course of presenting its case that I had one or two other things to think about other than trying to make arrangements or set up an appointment with Mr. Shultz to listen to that tape."

The State appears to be laboring under the mistaken belief that compliance with the discovery order will cause them undue hardship and loss of valuable time in preparing their case. The simple act of producing the tape for defendant's use would have been sufficient to comply with the court's order. The State was under no obligation to formally meet with the defendant and listen to the contents of the tape. By the same token, the defendant was under no obligation to follow up the court's order with additional requests for compliance with that order.

The tape clearly varies from the witness's trial testimony and other statements to the police by a sufficient amount to affect his credibility. The jury must be allowed to weigh the inconsistencies between the statements to determine for themselves the witness's credibility. The evidence is so material the withholding of it was clearly prejudicial to the defendant. The trial court abused its discretion in refusing to grant defendant a new trial.

Defendant next contends there is not sufficient evidence of a taking or confining of the victim, accompanied by force, to establish aggravated kidnapping, the underlying felony of the felony murder charge, and that his conviction on both counts should be reversed. Defendant claims the evidence shows Mitchell went voluntarily to the truck with Phillips. He argues there is no evidence showing Phillips forced Mitchell into the pickup after their conversation at the back of the vehicle.

The kidnapping and aggravated kidnapping statutes applicable to this case are set forth below:

21-3420. "Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:

(a) For ransom, or as a shield or hostage; or

(b) To facilitate flight or the commission of any crime; or

(c) To inflict bodily injury or to terrorize the victim or another; or

(d) To interfere with the performance of any governmental or political function. Kidnapping is a class B felony."

21-3421. "Aggravated kidnapping is kidnapping, as defined in section 21-3420, when bodily harm is inflicted upon the person kidnapped.

Aggravated kidnapping is a class A felony."

In *State v. Buggs,* 219 Kan. 203, 214, 547 P.2d 720 (1976), this court stated, in construing K.S.A. 21-3420:

"We therefore construe our statute as requiring no particular distance of removal, nor any particular time or place or confinement. Under our present statute it is still the fact, not the distance, of a taking (or the fact, not the time or place, of confinement) that supplies a necessary element of kidnapping."

We have carefully reviewed and compared all of Jenkins' statements and his trial testimony from which we conclude there is sufficient evidence, although varying from statement to statement, upon which a jury could convict defendant of aggravated kidnapping and felony murder beyond a reasonable doubt. The defendant brandished a gun, opened the pickup door and forced Mitchell to get in. He then proceeded to pistol whip him about the head and face. If that evidence is believed by a jury, the necessary elements of confinement, infliction of bodily injury and the resulting bodily harm are present to constitute a violation of K.S.A. 21-3421, thereby providing the underlying felony necessary to find felony murder.

The judgment of the trial court is reversed and the case is remanded for a new trial.

PRAGER, J., concurring and dissenting: I concur in the reversal of the case and the granting of a new trial. I respectfully dissent from the holding of the court that there was sufficient evidence presented at the trial to establish the offense of aggravated kidnapping under K.S.A. 21-3421. The factual circumstances in the case are set out in the majority opinion. It is clear from the record that the defendant, Cleophas Phillips, had been drinking and was highly intoxicated. Unfortunately, he had a gun. It is undisputed that Phillips was extremely angry because Michael Mitchell had been trying to seduce Phillips' ex-wife and sister. At Phillips' insistence, Jenkins drove Phillips to the home of Michael Mitch-

ell. Once there, Phillips went to the door and got Mitchell out of bed, saying they needed to talk. Phillips did not display the gun to Mitchell at that time and the two of them returned to the truck voluntarily. Mitchell sat down on the curb with Phillips and the two of them talked for a short time, while Jenkins remained in the truck. At this time, Phillips and Mitchell went to the back of the truck and had a short conversation. The two of them came around to the driver's side of the truck in which Jenkins was sitting. Phillips told Mitchell to get in the pickup and brandished the pistol for the first time. Mitchell got into the truck and thereafter Phillips proceeded to strike Mitchell repeatedly in the head with the pistol and a whiskey bottle. Phillips was standing outside the open door on the driver's side with Mitchell in the seat partially out of the truck. Jenkins told Phillips to stop hitting Mitchell, but the defendant ordered him away. Defendant then hit one more blow to Mitchell's head with the pistol and the pistol fired the fatal shot. Jenkins testified that it appeared to him that Phillips had no intent to fire the gun and that the discharge of the pistol surprised him. Phillips appeared shocked, immediately propped Mitchell up in the pickup, and then drove the truck to the hospital. Unfortunately Mitchell died.

On this evidence the defendant was convicted of felony murder and aggravated kidnapping. I cannot agree with the majority opinion that this evidence was sufficient to establish a kidnapping on the part of the defendant Phillips, as a basis for the application of the felony-murder doctrine. Essentially the same problem was presented in *State v. Buggs,* 219 Kan. 203, 547 P.2d 720 (1976). As noted in *Buggs,* K.S.A. 21-3421 requires that the taking or confinement be accomplished, not only by the prescribed means (*i.e.,* "by force, threat or deception"), but also with the specific intent to accomplish one of the four objectives listed. In my judgment, the act of forcing Mitchell into the truck was a movement or confinement which was slight, inconsequential, and merely incidental to the commission of the crime of battery. The beating in this case was accomplished in the presence of a nonparticipating witness, Jenkins. The beating could have been accomplished just as easily in the street as by placing Mitchell in the seat of the truck. In my judgment, to place the offense in this case in the category of felony murder is not only grossly unjust but is a violation of the rationale set forth in *Buggs.* I, therefore, respectfully dissent.