No. 54,559

STATE OF KANSAS, *Appellee,* v. DENNIS SHEPHERD, *Appellant.*

(657 P.2d 1112)

Opinion filed January 14, 1983.

*Carl E. Cornwell,* of Horner, Duckers & Cornwell, of Kansas City, argued the cause and was on the briefs for appellant.

*Scott K. Logan,* assistant district attorney, argued the cause and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Dennis Shepherd appeals his convictions by a jury of four counts of aggravated robbery (K.S.A. 21-3427).

Around midnight, April 28, 1981, two black males entered a Kansas City, Kansas, 7-11 store under the pretenses of buying some products and playing the amusement machines. One of the men asked the price of some typing paper. The other, identified later as Shepherd, attempted to obtain change for a dollar bill in order to operate the games. The night clerk responded that he was unable to open the register drawer just for change and

suggested he would have to wait a short while until the register was opened to ring up the next sale.

Following some additional discussion about opening the cash drawer, the man went to the back of the store to wait and the clerk went about his routine chores. Shortly thereafter, the same two men appeared at the checkout counter with guns demanding that the clerk open the drawer and hand over the money. The clerk, however, being unfamiliar with the operation of the register for "no sale" transactions was unable to open it. One of the men struck the clerk with his gun.

During the robbery, there were customers both in the store and entering the store. These people were instructed by the gunmen to put their wallets and the contents of their pockets on the counter. One of the robbers later picked up these items and fled. The other took the still unopened cash register to the parking lot where he broke into it, removed the contents, and also fled. Before the robbers left they made their victims lie on the floor. The entire affair was observed by the wife of one of the victims who was waiting outside in her car. The robbery took at least five minutes but may have lasted as long as twenty to twenty-five or thirty minutes according to one witness' testimony.

Shortly before the Wyandotte County robbery, two black males robbed a Johnson County Quik-Trip store using the same general modus operandi. In the course of the investigation of the Wyandotte County crime, three witnesses to that crime were shown a film strip taken by automatic cameras in the Johnson County store and positively identified the defendant and his accomplice as the Wyandotte County robbers. The Wyandotte County victims and witnesses were also shown photographic lineups and viewed live lineups in which the defendant was always positively identified as one of the robbers in this case. He was also positively identified in court. The accomplice, one George Holliday, entered a guilty plea on the charges and named the defendant as his partner. Holliday, however, was not called to testify at trial. The defendant relied on an alibi.

At the close of the evidence, the defendant requested that the jury be given an instruction on eyewitness identification testimony pursuant to *State v. Warren*, 230 Kan. 385, 635 P.2d 1236 (1981). The trial judge refused to give the instruction and de-

fendant asserts as his first point on appeal that this constituted reversible error.

The defendant argues on appeal that inconsistencies among the testimonies of the four victims and the fifth eyewitness indicate the identification evidence to be unreliable. He points out that the witnesses were in disagreement as to the robber's attire and facial hair and as to which robber struck the store clerk. We also note the differences in testimony as to the duration of the offense.

In *Warren* we said:

"In any criminal action in which eyewitness identification is a critical part of the prosecution's case *and there is a serious question about the reliability of the identification,* a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of the eyewitness identification testimony." Syl. ¶ 1. (Emphasis supplied.)

Inherent in the *Warren* decision is that the question of the propriety for the instruction lies with the trial court in the first instance.

The State contends that there was never a waver or doubt in the minds of the witnesses that the defendant was one of the robbers. Even though there may have been some minor discrepancies as to the description of the robber, that fact alone does not make the failure to give a *Warren* instruction error. The State also points out there was never any challenge to any of the lineups or any claim that the lighting was poor in the store during the robbery and that all the witnesses had occasion to observe the defendant's face for some period of time. This offense took considerably longer to complete than did the robbery in *Warren.*

The witnesses were consistent individually and their testimonies were all positive and unwavering. Although, given the defense of alibi in this case, identity was a critical part of the State's case, there was no serious question of reliability and the failure to give a *Warren* instruction did not constitute error.

For his second point on appeal the defendant argues that the court erred in allowing evidence of the Johnson County robbery to be admitted against him. The defendant had been convicted of that robbery before his trial in this case.

Prior to the admission of the evidence under K.S.A. 60-455, the court held a hearing to determine its relevancy, materiality, and possible prejudice to the defendant. Consistent with this court's holdings in *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974), the

trial judge made an admissibility determination outside of the presence of the jury and later gave a proper limiting instruction. The jury was instructed to the effect that evidence of the Johnson County robbery could only be considered for the limited purposes of determining "the defendant's identity, preparation, and opportunity," in the commission of the Wyandotte County crime.

The defendant's contention on appeal focuses on the prejudicial effect of the prior crimes evidence, but as we said in *State v. Faulkner*, 220 Kan. 153, 551 P.2d 1247 (1976), the prejudicial effect is to be balanced against the probative value of the evidence.

The State points out that there were a number of factual similarities between the instant crime and the Johnson County offense which make the evidence highly probative. The offenses occurred in close proximity to one another. There was testimony showing that the two convenience store locations were only about a ten-minute drive apart. The two offenses occurred within approximately one-half hour of each other. Both offenses involved convenience stores and were committed by two young black adult males carrying guns described as .38 or .357 caliber. In both robberies the men first spoke with the clerks about purchasing certain products, then robbed them. And in both robberies, the assailants, in order to facilitate their escape, made the victims lie down on the floor. Finally some of the Wyandotte County witnesses had identified the two persons shown in the Johnson County film strips as the Wyandotte County robbers.

If the two crimes had occurred in the same county, there is no doubt but that they could have been combined for trial. The trial court, in applying the balancing test enunciated in *Faulkner*, merely found that the probative value of the evidence outweighed any possible prejudice to the defendant. We find no abuse of discretion in that ruling.

For his next point on appeal, the defendant contends that the trial court erred in denying his second motion for a new trial. That motion was based on a change in George Holliday's version of the robbery which defendant alleges is newly discovered evidence which became available only after the trial of this case was completed and the first new trial motion overruled. At the hearing on the second new trial motion, Holliday admitted that he had previously told the court, when he entered his guilty

plea, that Shepherd had been his accomplice in the robbery. However, Holliday then told the court that he was lying previously and that another individual named Anderson had helped him. He claimed he had lied earlier because he thought it was in his best interest in trying to get a good deal on his plea bargain. The trial court did not find his recantation persuasive and denied defendant's motion.

As we said in *State v. Bryant,* 227 Kan. 385, 607 P.2d 66 (1980), recantation is looked upon with great suspicion. When a new trial motion is based on the recanting of a prosecution witness' testimony, the weighing of the recantation is for the trial judge in passing on the merits of the motion. *State v. Larkin,* 212 Kan. 158, Syl. ¶ 3, 510 P.2d 123, *cert. denied* 414 U.S. 848 (1973). The same principles apply when the motion is based upon a recantation by one who, while not actually testifying against the defendant before, had previously put a different story on record. The determination of whether to grant a new trial under such circumstances rests within the sound discretion of the trial court and nothing in the record indicates any abuse of that discretion. See *State v. Norman,* 232 Kan. 102, 652 P.2d 683 (1982).

Finally, appellant asserts that this court committed error when it denied his motion to remand this case to the trial court for the purpose of hearing another motion for new trial based upon alleged newly discovered evidence. At the time of filing the motion to remand on October 15, 1982, this case had already been docketed for oral argument to be heard on November 30, 1982. The motion contained the following allegations:

"2. That appellant has discovered new evidence which in the opinion of appellant is tantamount to grounds for a new trial.

. . . . .

"4. That appellant believes that the Assistant District Attorney failed to reveal exculpatory evidence that he was aware of to appellant prior to trial, to wit: an FBI report concerning photographs of appellant that the FBI compared."

There was no further indication of the evidence which defendant proposed to present to the trial court. After the State filed a response in opposition to the motion to remand, the motion was denied by this court on November 5, 1982. Defendant then sought permission of this court to file a supplemental brief on the question of whether this court had committed error and defendant also sought oral argument on the point. Both requests were granted. K.S.A. 22-3501 provides in part:

"A motion for a new trial based on the ground of newly discovered evidence may be made within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case."

The statutes do not provide any specific procedure for the handling and determination of a motion to remand a case from the appellate courts. The granting of a motion to remand a case from the appellate courts for the purpose of the trial court hearing a motion for new trial based upon alleged newly discovered evidence or for other trial court proceedings lies within the sound discretion of the appellate court. The granting of such a motion is not a matter of right which accrues in every case merely by filing a motion seeking remand. While the statutes are silent on procedural standards, better practice suggests that a defendant seeking to have a case remanded from the appellate courts should set forth with some specificity sufficient details of the evidence to be presented to the trial court in support of the motion for new trial so the appellate court may determine in the first instance whether there are valid grounds to expect that a new trial might be granted by the trial court. The appellate courts cannot be expected to operate in a vacuum and grant every motion to remand a case already on appeal absent a showing that the motion for new trial has merit and is not frivolous or an attempt to delay the appellate process.

In considering a motion to remand a case for further proceedings in the trial court, it is not the function of the appellate court to weigh and attempt to determine the credibility of the proposed evidence to be presented to the trial court. However, the appellate court may look to the allegations of the motion to remand to determine whether the proposed evidence, if proved, might warrant the granting of a new trial by the trial court. In doing so the appellate court will consider the allegations in the same light and under the same principles as the trial court would view the actual evidence. All doubts or inferences arising from the allegations in the motion to remand should be resolved in favor of the appellant.

From the supplemental brief filed by appellant and from oral argument we have now been apprised of the substance of the evidence appellant desires to present to the trial court. Appellant asserts that the Johnson County district attorney's office had secured mug shots of defendant Shepherd and sent them, along

with the automatic surveillance camera film strips to the Federal Bureau of Investigation, seeking a determination of whether the F.B.I. could make a positive identification of either of the robbers shown in the film strip by comparing it with the mug shots of the defendant. The F.B.I., after comparing the film strip and the mug shots of the defendant, responded in a written report which stated:

"A few general facial characteristics in common were observed between the photographs of Dennis Shepherd (K1) and the photographs of the [Johnson County] robbery suspect. However, a positive identification was not made because the K1 photographs were not taken in views sufficiently comparable to the views displayed in the Q1 film strips."

This report was at all times a part of the Johnson County district attorney's file which was available to Shepherd's defense attorneys. It also appears that the Johnson County film strips were shown to some of the witnesses to the Wyandotte County robbery and evidently they were able to identify one of the robbers in the film strip, who later turned out to be the defendant Shepherd, as one of the robbers in the Wyandotte County robbery.

Following the trial and conviction of Shepherd in Johnson County, an assistant district attorney from Wyandotte County went to Johnson County to confer with the prosecutor who had tried the Johnson County case. During that conference the Johnson County file was made available but the Wyandotte County prosecutor did not examine it in detail. He never saw the F.B.I. report and had no knowledge of its existence although the Johnson County prosecutor did mention to him that certain surveillance photos from the Johnson County robbery and mug shots of Dennis Shepherd had been sent to the F.B.I. for purposes of scientific identification analysis but that the F.B.I. could not make any positive scientific identification. This information was not relayed to defendant's counsel and defendant's present counsel did not become aware of the information until shortly before his motion to remand this case was filed in this court.

It is the contention of the appellant that the F.B.I. report contains exculpatory evidence that might have been utilized during trial to in some manner impeach the witnesses' identification of defendant. The defendant argues that the Wyandotte County prosecutor was under a positive legal duty to disclose

exculpatory evidence to him. We agree. *State v. Kelly,* 216 Kan. 31, 33, 531 P.2d 60 (1975). Justice requires that the principal onus be upon the prosecution to disclose favorable evidence. Therefore, he claims that because the Wyandotte County prosecutor did not tell him about the F.B.I. report, he should be given a new trial or at least a remand so that the district court can hear his motion for new trial. We disagree.

In *Kelly* this court explored the duty of the prosecution to disclose evidence to the defendant as that duty arose in different hypothetical situations. The court discussed several leading federal cases on the subject. The case of *United States v. Keogh,* 391 F.2d 138 (2d Cir. 1968), was cited as establishing three types of circumstances in which the disclosure problem arises. Those categories were restated in *Kelly* as follows:

"(1) [W]here there is a deliberate bad faith suppression for the purpose of obstructing the defense or intentional failure to disclose evidence which has high probative value and which could not have escaped the prosecutor's attention; (2) where there is a deliberate refusal to honor a request for evidence where the evidence is material to guilt or punishment, irrespective of the prosecutor's good or bad faith in refusing the request; and (3) where suppression was not deliberate and no request for evidence was made, but where hindsight discloses that it was so material that the defense could have put the evidence to significant use." p. 34.

In the instant case, the defendant concedes that there was neither an intentional corruption of the truth-seeking process nor a specific request for the F.B.I. report, thus this is a case falling in the third category and commonly referred to as "oversight" cases.

In the "oversight" cases, the *Kelly* court laid down the rule as follows:

"When the withholding of evidence by the prosecution is not deliberate and in bad faith and when the prosecution has not refused to honor a request for the evidence made at a proper stage of the proceedings, the defendant should be granted a new trial only if the record establishes: (1) that evidence was withheld or suppressed by the prosecution, (2) that the evidence withheld was clearly exculpatory, and (3) that the exculpatory evidence withheld was so material that the withholding of the same from the jury was clearly prejudicial to the defendant." p. 36.

The United States Supreme Court in *United States v. Agurs,* 427 U.S. 97, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976), an oversight case, stated:

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." pp. 112-113.

We are of the opinion that appellant's position lacks merit for several reasons. At the outset, it is apparent that the F.B.I. report was available to defense attorneys long before either trial. The rules relating to the granting of a new trial under K.S.A. 22-3501 on the grounds of newly discovered evidence were recently set forth in *State v. Johnson*, 222 Kan. 465, 565 P.2d 993 (1977):

"The rules for granting of a new trial for newly discovered evidence have often been stated. The granting of a new trial for newly discovered evidence is in the trial court's discretion. [Citation omitted.] A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. [Citation omitted.] The credibility of the evidence offered in support of the motion is for the trial court's consideration. [Citations omitted.] *The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial.* [Citations omitted.] The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. [Citations omitted.]" (Emphasis added.) p. 471.

The file of the Johnson County prosecutor was, at all times prior to and after trial, open to defendant's attorneys. Defendant's present appellate counsel in this case was also counsel of record for the defendant in the Johnson County case from November 23, 1981, until at least March 19, 1982. He represented the defendant at the sentencing in the Johnson County case and in the early stages of the appeal of that case. There has been no showing that the F.B.I. report was not readily available to defendant's trial counsel or to his present counsel.

Additionally, the materiality and relevance of the report is questionable at best. Generally speaking, evidence is exculpatory if it tends to disprove a material fact in issue. *Kelly*, 216 Kan. at 36. In the question before us, the F.B.I. had been asked to compare mug shots of Dennis Shepherd with the surveillance film depicting the Johnson County robbery in progress. The F.B.I. concluded that it could not identify any one in the sur-

veillance film as Dennis Shepherd because the mug shots were *not* taken in views sufficiently comparable to the views displayed in the film. Dennis Shepherd has at this time been sufficiently identified as one of the robbers in the surveillance film inasmuch as he was convicted of the robbery of the convenience store in Johnson County. Although an appeal in that case has not been finally determined, the records in this court and in the office of the Clerk of the District Court of Johnson County reflect that this same F.B.I. report was the basis for the filing of a motion there on the grounds of newly discovered evidence which had been withheld by the prosecution. That motion was overruled by the Johnson County trial court.

Finally, the witnesses in the Wyandotte County case, when shown the surveillance film, were relying on their own knowledge of the appearance of the defendant who committed the Wyandotte County robbery, not on the mug shots which were sent to the F.B.I. The F.B.I. report indicates no positive identification could be made because the mug shots were not taken from camera angles similar to those shown in the film strip. The witnesses, however, had an opportunity to view the defendant from all angles for from somewhere between five and thirty minutes. Their comparison was of the man and the film strip, not the mug shots and the film strip. The F.B.I. report does not address the question of the identity of the robbers in the Wyandotte County case, nor does it attempt to compare the actual defendant with the pictures on the film strip. Appellant's argument is one of attempting to compare apples with oranges on the theory both are fruit. Considering the positive evidence supporting the convictions in this case, the F.B.I. report, even if admissible in evidence, certainly would not be likely to produce a different result upon retrial.

While it is the function of the trial court and not the appellate courts to weigh and determine the credibility of alleged newly discovered evidence, we cannot say, on the showing made before this court, that it was error to refuse to remand this case for hearing on the proposed motion.

The judgment is affirmed.