No. 109,712

In the Matter of MICHAEL CLAY SCHNITTKER, *Respondent*.

(310 P.3d 399)

Opinion filed October 11, 2013.

*Alexander M. Walczak*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Michael Clay Schnittker*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Michael Clay Schnittker, of Overland Park, an attorney admitted to the practice of law in Kansas in 1994.

On January 3, 2013, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on January 24, 2013. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on March 8, 2013, when the respondent was personally present. The hearing panel determined that respondent violated KRPC 8.4(b) (2012 Kan. Ct. R. Annot. 643) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer) and 8.4(c) (engaging in conduct involving misrepresentation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

## "FINDINGS OF FACT

. . . .

"5. The Kansas Supreme Court admitted the respondent to the practice of law in the State of Kansas on September 30, 1994. Additionally, the Missouri Supreme Court admitted the respondent to the practice of law in the State of Missouri in May, 1995.

"6.     In late 2003 or early 2004, the respondent and Thomas H. Sullivan formed a law partnership, Sullivan & Schnittker, located in Overland Park, Kansas, performing primarily estate and business planning.

"7.     The agreement between the respondent and Mr. Sullivan required that all earned attorney fees be deposited into the firm's operating account. The firm paid the overhead expenses and other expenses from the operating account. After the expenses were paid, the remaining funds were distributed to each partner based upon the percentage of fees brought in by each partner.

"8.     In 2008 and 2009, the respondent began experiencing financial difficulties. In April, 2009, the respondent deposited earned attorney fees paid by a client into his personal account, rather than into the firm's operating account. For a period of three years, the respondent continued to deposit earned attorney fees paid by clients into his personal account, rather than into the firm's operating account.

"9.     At some point, Mr. Sullivan noticed that funds did not seem to be flowing into the firm as they had been. Mr. Sullivan reviewed a number of the respondent's files and noticed a discrepancy between the amount of money paid by the client and the amount of money deposited into the firm's operating account. Mr. Sullivan hired a forensic accountant to conduct a thorough review [of] the firm's books. The forensic accountant discovered that the respondent had taken more than $150,000 in earned attorney fees that should have gone into the partnership account and deposited the funds into his personal account.

"10.    Mr. Sullivan confronted the respondent and the respondent admitted that he had taken funds that did not belong to him. Mr. Sullivan and the respondent agreed that the respondent owed Mr. Sullivan $77,000. The respondent liquidated his personal individual retirement account and made full restitution to Mr. Sullivan. The respondent also paid the fees charged by the forensic accountant and an attorney that Mr. Sullivan had hired regarding this matter.

*"Conclusions of Law*

"11.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4(b) and KRPC 8.4(c), as detailed below.

### "KRPC 8.4(b)

"12.    'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In Kansas, theft is defined in K.S.A. 21-3701, as intentionally 'obtaining or exerting unauthorized control over property.' At the hearing on this matter, the respondent admitted that his misconduct amounted to felony theft. Felony theft is a crime that [reflects] adversely on the respondent's honesty and trustworthiness. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

## "KRPC 8.4(c)

"13. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he repeatedly and intentionally deposited firm money into his personal account. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

### "American Bar Association
### "Standards for Imposing Lawyer Sanctions

"14. In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"15. *Duty Violated*. The respondent violated his duty to the legal profession and to the public to maintain his personal integrity.

"16. *Mental State*. The respondent intentionally violated his duty.

"17. *Injury*. As a result of the respondent's misconduct, the respondent caused actual injury to Mr. Sullivan and the legal profession.

## "Aggravating and Mitigating Factors

"18. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"19. *Prior Disciplinary Offenses*. In 2009, the respondent participated in the attorney diversion program for having violated KRPC 1.3. Further, throughout the time the respondent participated in the attorney diversion program, the respondent was engaging in the misconduct in this case.

"20. *Dishonest or Selfish Motive*. The respondent repeatedly engaged in dishonest and selfish conduct by depositing earned attorney fees that belonged to the firm into his personal account. As such, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty and selfishness.

"21. *A Pattern of Misconduct*. The respondent has engaged in a pattern of misconduct by repeatedly taking earned attorney fees that belonged to the firm and depositing them in his personal account. The respondent engaged in the pattern of misconduct for a period of three years. As such, the hearing panel concludes that the respondent engaged in a pattern of misconduct.

"22. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1994. At the time of the misconduct, the respondent had been practicing law for approximately 15 years.

"23. *Illegal Conduct.* The respondent admitted that he engaged in conduct that constitutes the crime of felony theft.

"24. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"25. *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* Approximately six weeks after the respondent's theft was discovered, the respondent paid restitution to Mr. Sullivan.

"26. *The Present and Past Attitude of the Attorney as Shown by the Attorney's Cooperation During the Hearing and the Attorney's Full and Free Acknowledgment of the Transgressions.* During the formal hearing, the respondent fully and freely acknowledged the misconduct.

"27. *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent presented six letters which establish the respondent's previous good character and reputation.

"28. *Remorse.* At the hearing on the formal complaint, the respondent expressed genuine remorse for having engaged in the misconduct.

"29. *Remoteness of Prior Offenses.* The misconduct involved in the previous disciplinary complaint is remote in character to the misconduct involved in this case. The misconduct involved in the previous disciplinary complaint is not remote in time to the misconduct in this case.

"30. In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'5.11 Disbarment is generally appropriate when:
  (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; . . .
  (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious[ly] adversely reflects on the lawyer's fitness to practice.

'5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

### "Recommendation

"31. At the hearing on the formal complaint, the deputy disciplinary administrator argued that disbarment is the appropriate discipline to be imposed in this case. However, the deputy disciplinary administrator recognized the significant mitigating factors presented in this case and recommended that the respondent be suspended from the practice of law for an indefinite period of time. The re-

spondent argued that the hearing panel should recommend to the Supreme Court that the respondent be censured and that the censure be published in the Kansas Reports.

"32.   The respondent's conduct warrants disbarment—he intentionally took money that did not belong to him. However, the respondent presented persuasive mitigating evidence—the respondent admitted his wrongdoing, he repaid Mr. Sullivan within six weeks of the discovery of the theft, and [he] has taken full responsibility for his actions. Thus, the hearing panel is persuaded that a lesser level of discipline is appropriate in this case. Based upon the findings of fact, conclusions of law, the aggravating factors, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be indefinitely suspended from the practice of law.

"33.   Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2012 Kan. Ct. R. Annot. 350). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint, to which he filed an answer; he filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212 (c), (d) (2012 Kan. Ct. R. Annot. 368). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 8.4(b) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer) and 8.4(c) (engaging in conduct involving misrepresentation) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the hearing before this court, at which the respondent appeared, the respondent argued that he should be censured and that the censure should be published in the Kansas Reports. The office of the Disciplinary Administrator recommended that the respondent be indefinitely suspended. The Hearing Panel also recommended that the respondent be indefinitely suspended.

We do not take the recommendation of the hearing panel lightly. This court carefully considers the sanction recommendation of the hearing panel, as well as giving due regard to those of the Disciplinary Administrator. However, we are not bound by those recommendations and may fashion a sanction we deem appropriate under the circumstances. Supreme Court Rule 212(f) (2012 Kan. Ct. R. Annot. 370) (sanction recommendations are advisory only and shall not prevent the court from imposing sanctions greater or lesser than those recommended).

The respondent's request of published censure demonstrates that he does not appreciate the gravity of his misconduct. While participating in the attorney diversion program for an unrelated disciplinary violation, he was engaged in the misconduct in this case. The respondent systematically stole more than $150,000 that belonged to his law firm during a period lasting over 3 years and only ceased his thievery upon being caught. His mitigating circumstance that he violated no duty to his clients does little to counter the injury or potential injury to the public, the legal system, or the profession.

Further, by relying on his law partner's forgiveness, the respondent seems to imply that a benevolent crime victim's wishes should somehow supercede the imposition of a sanction typically imposed and warranted for such serious, flagrant misconduct.

As both the Disciplinary Administrator argued and the hearing panel noted, the respondent's conduct in and of itself warrants disbarment. Although both were persuaded that a less severe level of discipline is appropriate in this case, we nevertheless see no reason to impose anything less than what is typically prescribed for such serious, felonious misconduct.

Based upon our consideration of the entire record, the arguments of counsel, and statements of the respondent, we conclude that the appropriate discipline in this case is disbarment from the practice of law in this state. A minority of the court would follow the hearing panel's recommendation of indefinite suspension.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Michael Clay Schnittker be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2012 Kan. Ct. R. Annot. 294).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2012 Kan. Ct. R. Annot. 397), as amended December 1, 2012, and Rule 219 (2012 Kan. Ct. R. Annot. 398), as amended December 1, 2012.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.