IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,909

In the Matter of TIMOTHY J. GRILLOT,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed January 25, 2019. Disbarment.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and *Penny R. Moylan,* Deputy Disciplinary Administrator*,* was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Timothy J. Grillot*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Timothy J. Grillot, of Independence, an attorney admitted to the practice of law in Kansas in 1982.

On April 10, 2018, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent timely filed an answer to the complaint on April 24, 2018. Stipulations signed by respondent and the office of the Disciplinary Administrator were filed June 4, 2018. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on June 5, 2018, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.5 (2018

1

Kan. S. Ct. R. 294) (fees); 1.15 (2018 Kan. S. Ct. R. 328) (safekeeping property); 1.16(d) (2018 Kan. S. Ct. R. 333) (termination of representation); 3.3(a)(1) (2018 Kan. S. Ct. R. 344) (candor toward tribunal); 8.4(b) (2018 Kan. S. Ct. R. 381) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"*DA12756*

"8.  In 2005, a jury convicted N.H. of capital murder and several drug offenses. His convictions were affirmed by the Kansas Supreme Court on April 15, 2010.

"9.  On April 13, 2011, N.H. filed a *pro se* K.S.A. 60-1507 motion in Montgomery County District Court, case number 11-CV-000071. The motion was legally insufficient. On April 13, 2011, N.H. also filed a *pro se* motion for a continuance to supplement his petition with specific grounds for relief and a *pro se* motion for appointment of counsel.

"10.  On August 19, 2011, the district court granted N.H.'s motion for a continuance to supplement his K.S.A. 60-1507 motion and appointed Rustin Rankin to represent him.

"11.     Mr. Rankin did not file any supplemental pleadings within the time period provided by the district court. However, on November 15, 2011, N.H. filed a *pro se* motion seeking additional time to file a memorandum in support of his K.S.A. 60-1507 motion. The district court did not rule on the motion. On December 20, 2011, N.H. filed an untimely *pro se* memorandum in support of his K.S.A. 60-1507 motion.

"12.     On February 15, 2013, the State filed a motion to dismiss the K.S.A. 60-1507 motion. The court held a hearing on the motion to dismiss in April, 2013. The district court provided N.H. with an opportunity to present evidence. Mr. Rankin, who appeared with N.H. at the hearing, declined that offer and advised the court that he and his client would rely on the *pro se* motion and memorandum filed by N.H. On August 16, 2013, the district court denied N.H.'s K.S.A. 60-1507 motion. (Mr. Rankin was later disbarred for conduct unrelated to his representation of N.H. See *In re Rankin*, 302 Kan. 181, 351 P.3d 1274 [2015]).

"13.     Mr. Rankin filed a timely notice of appeal and the district court appointed the appellate defender's office to represent N.H. Later, on April 1, 2014, the district court appointed the respondent to represent N.H. in the appeal.

"14.     On October 14, 2014, the respondent filed the initial brief with the Kansas Court of Appeals. The brief failed to contain appropriate citations to the record as required by Rule 6.02(a)(4) (2017 Kan. S. Ct. R. 34). Consequently, after receiving notice from the Clerk of the Appellate Courts, the respondent filed a corrected brief on October 24, 2014.

"15.     The sole argument raised by the respondent in the appellant's brief was that Mr. Rankin provided N.H. with ineffective assistance of counsel. Specifically, the respondent mistakenly alleged that Mr. Rankin, not N.H., filed the supplemental memorandum in support of the K.S.A. 60-1507 motion after the deadline had passed. The respondent presented no arguments in support of extending the deadline to prevent manifest injustice. Finally, the respondent did not specify the relief he sought for N.H.

"16.     On October 30, 2015, the Court of Appeals affirmed the district court's dismissal of the action. The Court of Appeals noted that N.H.'s appeal hinged 'on the effectiveness of Rankin in handling the 60-1507 motion in the district court. But we haven't an appellate record from which to determine why Rankin did what he did or more aptly, perhaps, why he seemingly didn't do much of anything.' *N.H. v. State*, No. 111,794, 2015 WL 6629778 at 2 (Kan. 2015) (unpublished opinion). The Court of Appeals further noted that N.H. did not request a remand to the district court for a *Van Cleave* hearing to determine whether Mr. Rankin's representation was ineffective before the district court. *N.H.*, 2015 WL 6629778 at 2. See *State v. Van Cleave*, 239 Kan. 117, Syl. ¶ 2, 716 P.2d 580 (1986) ('When appellate counsel in a criminal case desires to raise the issue of ineffective assistance of counsel and that issue has never been ruled upon by the trial court, defendant may seek a remand of the case to the trial court for an initial determination of the issue. In doing so, the procedure for remand to consider newly discovered evidence explained in *State v. Shepherd*, 232 Kan. 614, 657 P.2d 1112 (1983), and set forth in this opinion, should be followed.').

"17.     The Court of Appeals concluded its opinion by noting that N.H. could bring another K.S.A. 60-1507 motion 'premised on the twin arguments that inadequate legal representation in this proceeding deprived him of a fair hearing on the underlying constitutional challenges to his convictions and that he has challenges warranting judicial consideration.' *N.H.*, 2015 WL 6629778 at 2.

"18.     On November 20, 2015, the respondent purportedly sent a copy of the appellate decision to N.H. However, N.H. never received it.

"19.     On April 9, 2016, and May 14, 2016, N.H. sent the respondent letters inquiring about the status of the appeal. The respondent did not respond to N.H.'s inquiries.

"20.     In November, 2016, N.H. contacted the Clerk of the Appellate Courts and learned that the Court of Appeals had affirmed the district court's dismissal of his K.S.A. 60-1507 motion.

"21.    On January 12, 2017, N.H. filed a complaint with the disciplinary administrator's office. The respondent cooperated in the disciplinary investigation.

"*DA12931*

"23.    On November 3, 2015, the respondent filed a petition for issuance of letters of administration in Labette County District Court case number 15-PR-65PA, entitled *In the Matter of the Estate of A.V., Deceased and K.D., Deceased and Dissolution of the A.V. and K.D. Trusts*. The petition alleged:

    a.    A.V. died testate on July 21, 2013, a resident of Labette County, Kansas, and a citizen of the United States;

    b.    A.V. was survived by her husband, K.D., who died on August 28, 2013, in India; and

    c.    the decedents' beneficiaries and heirs consisted of A.V.'s two nephews (R.K. and V.K.) and K.D.'s daughter (A.T.), all of whom resided in India. In the petition, the respondent requested that he be appointed as an emergency administrator for the purpose of preserving the estate's assets, at that time estimated at $157,000.

"24.    Also on November 3, 2015, the respondent filed consents executed by R.K. and V.K. for the respondent to serve as the emergency administrator without bond, a petition for the issuance of emergency letters of administration, and the respondent's oath as emergency administrator. The court entered an order appointing the respondent as emergency administrator.

"25.    A hearing on the petition and dissolution of the trusts was originally scheduled for January 11, 2016. However, the matter was continued. The court scheduled a status hearing for August 25, 2016. The respondent and an attorney retained by A.T. appeared. The parties advised the court that a dispute had arisen between the heirs and beneficiaries.

5

"26.    The matter was continued on several occasions until January 2017. Throughout the time period, the parties informed the court that they were attempting to resolve the dispute, but were struggling with language and communication barriers with the clients. During the January 2017 status hearing, the court set the matter for trial on May 10, 2017, but encouraged the parties to agree on stipulated facts to avoid the need for the parties, who all resided in India, to appear in Kansas.

"27.    On April 26, 2017, A.T.'s attorney filed a motion for the respondent to file an inventory and accounting and to inform the parties of the tax status of the estates.

"28.    On May 10, 2017, the district court learned that the parties had made no progress on resolving their dispute.

"29.    The district court appointed Lucas Nodine to be the estate administrator and ordered that the respondent's appointment as emergency administrator terminate. The district court provided the respondent with 30 days to prepare an inventory of the estates' assets, to prepare an accounting of any receipts or disbursements during his time as emergency administrator, and to prepare a report regarding the tax status of the estates. The district court's journal entry, documenting the oral orders, was filed on June 15, 2017.

"30.    On July 6, 2017, the respondent filed an initial accounting with the district court, but subsequently filed an amended accounting on July 18, 2017. The amended accounting detailed estate assets of approximately $358,000. The respondent included only two disbursements:  one for publication expenses and one for reprinting bank statements.

"31.    On August 18, 2017, Mr. Nodine notified the district court that the respondent disbursed a total of $45,000, from the estate account to himself for attorney fees. The eight disbursements were made from November 25, 2015, through August 19, 2016. The disbursements were not presented to the district court, nor were they approved

6

by the district court. Further, the disbursements were not reported in the July 2017, estate accountings filed by the respondent.

"32.     Mr. Nodine further informed the district court that on June 28, 2017, the respondent deposited a $45,000 check drawn on his trust account into the estate account. The deposit was also not reported in the estate accountings filed by the respondent.

"33.     On August 21, 2017, the Honorable Jeffry L. Jack, Labette County District Court Judge, filed a complaint against the respondent. The respondent cooperated in the disciplinary investigation. In his response to the complaint, the respondent admitted that he improperly paid out $45,000, from the estate funds to himself.

"*Conclusions of Law*

"34.     Based upon the written stipulation and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safekeeping property), 1.16 (terminating representation), and 8.4 (professional misconduct), as detailed below. Additionally, based upon the above findings of fact, the hearing panel concludes that the respondent violated Rule 3.3(a)(1), as alleged in the formal complaint.

"KRPC 1.1

"35.     Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The respondent did not provide competent representation to N.H. when he alleged ineffective assistance of counsel for the first time on appeal without first having requested a *Van Cleave* hearing. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

"KRPC 1.3

"36.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The respondent failed to diligently and promptly represent N.H. when he failed to request a *Van Cleave* hearing and when he failed to timely notify N.H. of the Court of Appeals' decision. The respondent's failure to timely notify N.H. of the Court of Appeals' decision left little time to take action. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4

"37.    KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated Rule 1.4(a) when he failed to respond to N.H.'s letters. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.5

"38.    KRPC 1.5 provides that '[a] lawyer's fee shall be reasonable.' It is *per se* unreasonable for the respondent to take $45,000 in attorney's fees from an estate without prior court approval. The hearing panel concludes that the respondent violated KRPC 1.5.

"KRPC 1.15

"39.    Lawyers must keep the property of their clients safe. See KRPC 1.15. In this case, the respondent failed to properly safeguard his client's property when he took $45,000 from the estate without the permission of the court. Therefore, the hearing panel concludes that the respondent violated KRPC 1.15.

8

"40.    KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

In this case, the respondent violated KRPC 1.16(d) when he abandoned his representation of N.H. He took no action to protect N.H.'s interests after the Court of Appeals' decision and he did not notify N.H. that he was no longer providing any representation. The hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 3.3(a)(1)

"41.    'A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.' KRPC 3.3(a)(1). In this case, the respondent filed accountings in the estate case but failed to include entries that detailed the eight checks he wrote himself which totaled $45,000 and the repayment of the $45,000 from his attorney trust account. By filing pleadings with the court which contained false information, the hearing panel concludes that the respondent knowingly made false statements of fact to the court in violation of Rule 3.3(a)(1).

"Rule 8.4(b)

"42.    'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in

9

other respects.' KRPC 8.4(b). While the respondent was not charged and convicted of any criminal offenses, the respondent's conduct rises to the level of criminal deprivation of property, in violation of K.S.A. 21-5803. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

## "KRPC 8.4(c)

"43.    'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' Rule 8.4(c). The respondent engaged in conduct that involved dishonesty when he took $45,000 without the permission of the court and when he filed false accountings with the court. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

## "KRPC 8.4(d)

"44.    'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he filed incomplete, inaccurate, and false accountings in the estate case. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

*"American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"45.    In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"46.    *Duty Violated*. The respondent violated his duty to his client to provide competent and diligent representation and reasonable communication. The respondent

10

also violated his duty to his client to properly safeguard his client's property. Finally, the respondent violated his duty to the public to maintain his personal integrity.

"47.    *Mental State*. The respondent knowingly violated his duties.

"48.    *Injury*. As a result of the respondent's misconduct, the respondent caused serious potential injury.

"49.    *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a.    Prior Disciplinary Offenses. The respondent previously participated in the attorney diversion program. On February 28, 2002, the respondent entered a diversion agreement for having violated KRPC 1.3 (diligence) and 1.4 (communication).

b.    Dishonest or Selfish Motive. The respondent improperly took $45,000 from the estate and filed accountings which did not detail the transfers to him or the deposit from him. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty.

c.    A Pattern of Misconduct. On eight separate occasions, the respondent took funds from the estate. As such, the respondent engaged in a pattern of misconduct.

d.    Multiple Offenses. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safekeeping property), 1.16 (terminating representation), 3.3 (candor to the tribunal), and 8.4 (professional misconduct). As such, the hearing panel concludes that the respondent committed multiple offenses.

11

e.      Vulnerability of Victim. A.V. and K.D.'s heirs and beneficiaries were vulnerable to the respondent's misconduct.

f.      Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1982. At the time of the misconduct, the respondent had been practicing law for more than 30 years.

g.      Illegal Conduct, Including that Involving the Use of Controlled Substances. The respondent engaged in illegal conduct when he paid himself $45,000 from the estate.

"50.      Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.      Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent suffers from depression. Additionally during the relevant time period, the respondent's son had a serious accident, the respondent's father was gravely ill, and the respondent's father passed away. It is clear that the respondent's personal problems contributed to his misconduct.

b.      Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct. The respondent made restitution by depositing $45,000 into the estate account. The respondent repaid the funds before the theft was discovered and before the disciplinary complaint was filed.

c.      The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions. The respondent fully cooperated with the disciplinary

12

process. Additionally, the respondent admitted the facts that gave rise to the violations and the respondent stipulated that he violated various rules.

d.      Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. The respondent is an active and productive member of the bar of Southeast Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by the testimony of Sara Beezley and the many letters received and reviewed by the hearing panel. The attorneys who testified and wrote letters on behalf of the respondent universally indicated that the respondent's conduct in this case was out-of-character.

e.      Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

f.      Remoteness of Prior Offenses. The misconduct which gave rise to the respondent's participation in the attorney diversion program is remote in time to the misconduct in this case, having occurred in 2002.

"51.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12   Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.42   Suspension is generally appropriate when:

(a)     a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

13

> (b)     a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.
>
> '5.11     Disbarment is generally appropriate when:
>
> . . . .
>
> (b)     a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
>
> '6.12     Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.'

"*Recommendation*

"52.     The disciplinary administrator recommended that the respondent be disbarred. Counsel for the respondent recommended that the respondent's license be suspended for a period of one year.

"53.     The respondent engaged in serious misconduct. The respondent took $45,000 from an estate without permission. While it is important that he repaid the money, the fact remains he engaged in serious dishonest conduct.

"54.     The respondent's serious misconduct is mitigated by considerable evidence in his favor. Prior to engaging in the misconduct in this case, the respondent enjoyed a long and productive law career in Southeast Kansas. The hearing panel was particularly moved by Exhibit N, an email message sent from a young man the

14

respondent previously coached in baseball. Clearly, the respondent has made significant contributions to his community.

"55.    Based on the serious nature of the respondent's misconduct and after considering the Supreme Court's opinions in *In re Wright*, 276 Kan. 357 (2003); *In re Schnittker*, 298 Kan. 89 (2013); *In re Harrington*, 305 Kan. 643 (2016); and *In re Lundgren*, 306 Kan. 482 (2017), a majority of the hearing panel recommends that the Supreme Court indefinitely suspend the respondent's license to practice law.

"56.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

.  .  .  .

"Concurring and Dissenting Opinion

"While I concur in the above findings of fact and conclusions of law, I respectfully dissent from the majority's recommendation in this case. The misconduct in this case was the result of a perfect storm—the respondent suffers from depression, his son was in a serious car accident, his father was gravely ill, and his father passed away all in a relatively short period of time. Because of the significant evidence in mitigation, and because of the impressive endorsements by respected members of Mr. Grillot's community and profession, I recommend that the respondent's license be suspended for a period of two years. I also recommend that prior to considering reinstating the respondent's license to practice law, the Court require the respondent to file a petition for reinstatement and appear before a hearing panel of the Kansas Board for Discipline of Attorneys pursuant to Rule 219."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of

15

KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint to which he filed an answer. Respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255). Furthermore, the facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.1 (2018 Kan. S. Ct. R. 289) (competence); 1.3 (2018 Kan. S. Ct. R. 292) (diligence); 1.4(a) (2018 Kan. S. Ct. R. 293) (communication); 1.5 (2018 Kan. S. Ct. R. 294) (fees); 1.15 (2018 Kan. S. Ct. R. 328) (safekeeping property); 1.16(d) (2018 Kan. S. Ct. R. 333) (termination of representation); 3.3(a)(1) (2018 Kan. S. Ct. R. 344) (candor toward tribunal); 8.4(b) (2018 Kan. S. Ct. R. 381) (commission of a criminal act reflecting adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (engaging in conduct prejudicial to the administration of justice). The evidence also supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. The hearing panel majority recommended that respondent be suspended indefinitely from the practice of law. A minority recommended a two-year suspension followed by a Rule 219 (2018 Kan. S. Ct. R. 264) reinstatement hearing. At the hearing

before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be disbarred. The respondent requested indefinite suspension.

This court agrees with the recommendation of the Disciplinary Administrator and holds that disbarment is the appropriate discipline.

The respondent violated multiple rules of professional conduct and their subsections, some of them numerous times. We agree with the panel that he engaged in "serious dishonest conduct." Among other things, he admitted that while he was the emergency administrator of the A.V. estate he improperly paid out $45,000 from its funds to himself. And he made these eight different estate disbursements over nine months without: (1) presentation to the district court; (2) approval by the court; or (3) reporting to that court when, pursuant to court order, he filed the July 2017 estate accountings. While he did make repayment, he did so only after the court ordered him to file the accountings; and he did not report that repayment to the court. See American Bar Association Standard 5.11 ("Disbarment is generally appropriate when . . . [b] a lawyer engages in any other intentional conduct involving dishonesty . . . that seriously adversely reflects on the lawyer's fitness to practice.").

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that TIMOTHY J. GRILLOT be and he is hereby disciplined by disbarment in accordance with Supreme Court Rule 203(a)(1) (2018 Kan. S. Ct. R. 234).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

17

ROSEN, J., not participating.

DAVID B. DEBENHAM, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Debenham was appointed to hear case No. 119,909 vice Justice Rosen under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.